**CHRISTOPHER W., et al.,**
**Plaintiffs, Appellants,**

**v.**

**PORTSMOUTH SCHOOL COMMITTEE,**
**etc., et al., Defendants, Appellees.**

No. 88–1879.

United States Court of Appeals,
First Circuit.

Heard March 1, 1989.

Decided June 16, 1989.

As Amended June 20, 1989.

Patricia M. Beede, Newport, R.I., Rhode Island Legal Services, Inc., for plaintiffs, appellants.

Joseph B. Going, Newport, R.I., for defendants, appellees.

Before CAMPBELL, Chief Judge, BOWNES, Circuit Judge, and FUSTE,[*] District Judge.

BOWNES, Circuit Judge.

Plaintiff-appellant Christopher W. appeals an order of the district court which held that he had not exhausted administrative remedies pursuant to the Education for All Handicapped Children Act prior to seeking relief in district court, and that therefore the court lacked jurisdiction to hear the case. We affirm.

## I. BACKGROUND

Christopher W. was born January 14, 1970. He entered school in 1975, and began to manifest attendance and behavior problems. In 1978, he was evaluated as being learning disabled and requiring special education services in speech therapy. On October 10, 1979, the school's psychiatrist diagnosed Christopher W. as being school phobic and eligible for major behaviorally disordered support services. The child was placed in the Bradly Hospital Day (School) Program. In the 1981–1982 school year he was placed in the local school system in a self-contained setting at Portsmouth Middle School, where he continued to have tardiness and behavior problems. In the 1984–1985 and 1985–1986 school years, pursuant to an individualized education program (IEP)[1] approved by his mother, Christopher W. was enrolled as a special education student in Portsmouth High School. He missed many classes due to absences and being late, and was frequently placed on suspension by the school

---

[*] Of the District of Puerto Rico, sitting by designation.

1. An IEP is a key provision of the Education for All Handicapped Children Act. 20 U.S.C. § 1400 *et seq.* It is a written plan developed by the local education agency in conjunction with the parents and teacher, which provides "specially designed instruction to meet the unique needs" of the handicapped child. 20 U.S.C. § 1401(19). Such a program is to be periodically reviewed, and if appropriate, revised. 20 U.S.C. § 1412(4) and 1414(a)(5).

authorities. The Portsmouth School Committee's policy is that if a student is absent 25% of the time from a class, the student is removed from the class and receives a failing grade for that course. In accord with this policy, Christopher W. received no academic credit for any of his courses. Christopher W.'s mother testified that she was never informed of her right to challenge the school's disciplinary decisions through an administrative process.

On May 15, 1985, a psychiatric evaluation of Christopher W. confirmed the previous diagnosis of 1979, that he was behaviorally disordered. On May 29, 1985, a multi-disciplinary team (MDT) met and recommended continued placement in a self-contained classroom; it did not determine if there was a relationship between the misbehavior for which he was being disciplined, and his handicapping condition.

On June 7, 1985, Christopher W. filed a complaint with the Rhode Island Department of Education pursuant to the Education Division General Administrative Regulations (EDGAR), 34 C.F.R. § 76.780, alleging noncompliance with federal and state regulations regarding procedural safeguards.[2] On November 8, 1985, the Rhode Island Department of Education notified the Superintendent of Portsmouth Schools that the disciplinary actions taken against Christopher W. violated the law because the MDT had not met to determine if there was a causal relationship between the misbehavior for which he was being disciplined and his handicap, and if his educational placement was appropriate. After

yet another suspension of Christopher W. by the school on November 29, 1985, a letter was sent by the Rhode Island Commissioner of Education to the Portsmouth School Committee stating:

> [I]t has come to my attention that Christopher W. has again been suspended from school without benefit of evaluation and due process proceedings available to handicapped students. If this is the case, the suspension must be stayed pending the outcome of the special education evaluation process and the subsequent due process review of this evaluation under the Education of the Handicapped Act.

The school made no written response to this letter, but out-of-school suspensions were replaced by in-school detentions.

On December 3, 1985, the Superintendent of Schools responded to the EDGAR complaint that had been filed on June 7, 1985, by forwarding to the Rhode Island Department of Education a November 27, 1985 letter from Mr. William Hilton, Regional Administrator of Special Education. The letter stated: that the MDT had met on November 18, 1985; that it had determined that Christopher W. was behaviorally disordered, but that "not all of his inappropriate behavior [was] due to his handicapping condition;" and that the MDT had decided upon a course of action for Christopher W., which included placement in another school, tutoring, a psychiatric evaluation, and counselling. Christopher W. argues that these procedures violated 34 C.F.R. § 300.552[3] because the placement was de-

---

**2.** 34 C.F.R. § 76.780 states:

> *A state shall adopt complaint procedures:*
> (a) A state shall adopt written procedures for:
>   (1) Receiving and resolving any complaint *that the State* or a subgrantee *is violating a Federal statute* or regulations that apply to a program;
>   (2) Reviewing an appeal from a decision of a subgrantee with respect to a complaint; and
>   (3) Conducting an on-site investigation of a complaint if the State determines that an on-site investigation is necessary.
> (Emphasis added).

EDGAR provides an administrative mechanism for assuring that a state complies with state-administered federal programs, including the Education for All Handicapped Children

Act, 20 U.S.C. § 1400 et seq. EDGAR is to be distinguished from the specific administrative complaint procedures detailed in the Education for All Handicapped Children's Act itself. 20 U.S.C. § 1415 (see *infra*). *See Mrs. W. v. Tirozzi*, 832 F.2d 748, 757–58 (2d Cir.1987).

**3.** 34 C.F.R. § 300.552 states in relevant part:
> *Placements.* Each public agency shall insure that:
> (a) *Each handicapped child's educational placement:*
>   (1) Is determined at least annually,
>   (2) *Is based on his or her individualized education program ....*
> (b) The various alternative placements included under § 300.551 are available to the extent necessary to implement the individualized ed-

cided before the evaluations were made and IEP determined, rather than being based on the evaluations and the IEP.

In 1986, Christopher W. continued to experience attendance problems in school. On February 6, 1986, the Rhode Island Department of Education sent a letter to the Portsmouth School Committee stating:

> It appears that Christopher's handicapping condition contributes to his inability to attend school on a regular and timely basis. The fact that he received no credit last year in any subject areas because he missed 25% of those courses appears to be contrary to § 504 of the Rehabilitation Act of 1973.... [A] full evaluation of Christopher, to include a vocational assessment, should take place as soon as possible for the purpose of identifying an appropriate educational program.

Several meetings were held between the school and Christopher W. in the spring of 1986, but no IEP was agreed upon. Christopher W. received no academic credit for the 1985–1986 school year, because of his absences. The Portsmouth School Committee refused to implement a behavioral management program which had been developed by Dr. Steven Imber, a psychologist, to alleviate Christopher W.'s attendance and behavior problems. In June 1987, the school committee arranged a residential placement for Christopher W. at Grove School to begin in September, but Christopher W. voluntarily left that school on September 17, 1987. On March 28, 1988, an IEP was agreed upon for Christopher W. to attend Middletown High School, but at the end of April, 1988, Christopher W. left that school also. He has since attempted to re-enroll at Portsmouth High School without success. Christopher W. is currently not attending any school.

Christopher W. filed a complaint on December 6, 1985, in district court, under the Education for All Handicapped Children Act (20 U.S.C. § 1400 *et seq.*), § 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794), and the Civil Rights Act (42 U.S.C.

§ 1983). The complaint requested: that injunctive relief be granted prohibiting the Portsmouth School Committee from imposing any further disciplinary sanctions against Christopher W. without the procedural safeguards mandated by the Education for All Handicapped Children Act; that the Portsmouth School Committee's policy of denying academic credit for absences exceeding 25% of class meetings without considering how a student's handicapping condition affects his attendance, not be applied to Christopher W.; that Christopher W. receive the academic credits he had earned and would have received but for this policy; and that any reference to suspensions be expunged from his permanent school record. Christopher W.'s counsel stipulated that except for the EDGAR complaint that had been filed on June 7, 1985, Christopher W. had not pursued any other administrative remedies.

On October 20, 1986, Christopher W. filed a motion for Summary Judgment, claiming there were no material facts in dispute. On November 3, 1986, the defendants filed a Motion to Dismiss or for Summary Judgment, asserting failure to state a claim upon which relief could be granted and lack of jurisdiction in that plaintiff failed to exhaust administrative remedies. The district court did not rule on these pretrial motions. The case was heard on May 3, 4 and 6, 1988.

On July 8, 1988, after hearing Christopher W.'s witnesses, the district court granted the defendant's motions, and *sua sponte*, a motion for directed verdict. In a bench decision, the district court concluded that the question of whether a student's absences are caused by his handicap, generally requires findings by the state and the generation of a record, before a federal court can review the issue. The court noted that exceptions to such a procedure exist where it would be futile, e.g. where the state agency itself prevented administrative remedies from being exhausted. The

ucation program for each handicapped child....
(d) In selecting the least restrictive environment, consideration is given to any potential

harmful effect on the child or on the quality of services which he or she needs.
(Emphasis added).

court concluded, however, that failure to notify the parent, particularly where parent's counsel had been notified, was not sufficient to invoke an exception. The court held that Christopher W. had failed to pursue his administrative remedies with the State Department of Education "to a conclusion that I can pass on at this point in time." Christopher W. has appealed this judgment.

## II. JURISDICTION

### A. Exhaustion Requirement

The Education for All Handicapped Children's Act (EHA), provides procedural safeguards for a handicapped child and his or her parents with respect to the provision of a free appropriate public education. 20 U.S.C. § 1415. These include: an opportunity for the parents to examine all relevant records with respect to the identification, evaluation, and educational placement of the child, and the provision of a free appropriate public education to such child; an opportunity to obtain an independent educational evaluation of the child; written prior notice to the parents of any proposals or refusals to change an educational placement; and an opportunity to present complaints relating to such educational placement. 20 U.S.C. § 1415(b)(1). Whenever a complaint is received, the parent "shall have an opportunity for an impartial due process hearing which shall be conducted by the State educational agency or by the local educational agency...." 20 U.S.C. § 1415(b)(2). If such a hearing is conducted by a local educational agency, a party may appeal to the State educational agency. 20 U.S.C. § 1415(c). Federal regulations mandate that a hearing must be held and a final decision must be reached not later than 45 days after the public agency receives a request for a hearing. 34 C.F.R. § 300.512. The statute also provides for civil action by an aggrieved party:

> Any party aggrieved by the findings and decision made under subsection (b) of this section who does not have the right to an appeal under subsection (c) of this section, and any party aggrieved by the findings and decision under subsec-

tion (c) of this section, *shall have the right to bring a civil action* with respect to the complaint presented pursuant to this section, which action may be brought in any State court of competent jurisdiction or *in a district court* of the United States without regard to the amount in controversy. In any action brought under this paragraph *the court shall receive the records of the administrative proceedings*, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate.

20 U.S.C. § 1415(e)(2) (emphasis added). The EHA further directs that a handicapped child "shall remain in [his or her] then current educational placement" pending completion of any review proceedings, unless the parents and state or local educational agency otherwise agree. 20 U.S.C. § 1415(e)(3). In 1986 Congress amended the EHA and added the following section:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, title V of the Rehabilitation Act of 1973, or other Federal statutes protecting the rights of handicapped children and youth, except that *before the filing of a civil action under such laws* seeking relief that is also available under this subchapter, *the procedures* under subsections (b)(2) and (c) of this section *shall be exhausted to the same extent as would be required had the action been brought under this subchapter.*

20 U.S.C.A. § 1415(f) (West Supp.1988) (emphasis added).

Thus, the language of § 1415 of the EHA indicates that the administrative procedures outlined in the statute are to be pursued *prior* to recourse to the district courts. The exhaustion of administrative remedies doctrine has long been held to mean that "no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50–51, 58

S.Ct. 459, 463–64, 82 L.Ed. 638 (1938). This doctrine enables the agency to develop a factual record, to apply its expertise to the problem, to exercise its discretion, and to correct its own mistakes, and is credited with promoting accuracy, efficiency, agency autonomy, and judicial economy. *See McKart v. United States*, 395 U.S. 185, 194, 89 S.Ct. 1657, 1663, 23 L.Ed.2d 194 (1969); *Ezratty v. Commonwealth of Puerto Rico*, 648 F.2d 770, 774 (1st Cir. 1981). But, where agency proceedings will be futile, such benefits do not accrue. Therefore, the exhaustion doctrine "is not to be applied inflexibly." *McGee v. United States*, 402 U.S. 479, 483, 91 S.Ct. 1565, 1568, 29 L.Ed.2d 47 (1971).

Specifically in relation to the EHA, the courts have interpreted the statute to mean that ordinarily, plaintiffs must exhaust administrative remedies before initiating court action. In *Smith v. Robinson*, 468 U.S. 992, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984), the Supreme Court concluded that the EHA was a comprehensive statute in which "Congress intended handicapped children with constitutional claims to a free appropriate education to pursue those claims through the carefully tailored administrative and judicial mechanism set out in the statute," *id.* at 1009, 104 S.Ct. at 3467, and that to "allow[ ] a plaintiff to circumvent the EHA administrative remedies would be inconsistent with Congress' carefully tailored scheme." *Id.* at 1012, 104 S.Ct. at 3469. *See also David D. v. Dartmouth School Committee*, 775 F.2d 411, 422 (1st Cir.1985), where we iterated the procedural steps that were to be followed in complaints authorized by the EHA, noting that the *"culmination* of the state administrative appeals process is ... to take the matter to either state or federal court." (Emphasis added). We went on to emphasize that "a complaint may be brought and *pursued up the reviewing ladder* to a state or federal court per § 1415(e)(2)," *id.* at 418 (emphasis added), and that "for issues to be preserved for judicial review they must first be presented to the administrative hearing officer." *Id.* at 424. *Accord Association for Retarded Citizens of Alabama v. Teague*, 830 F.2d 158, 160 (11th Cir.1987); *Riley v. Ambach*, 668 F.2d 635, 640–41 (2d Cir.1981).

It is clear, however, that under certain circumstances, exhaustion may not be required under the EHA:

> The EHA does set out specific procedural safeguards that must be guaranteed by a State seeking funds under the Act. *See* 20 U.S.C. § 1415. And although some courts have concluded that the EHA does not authorize injunctive relief to remedy procedural deficiences [citation omitted], other courts have construed the district courts' authority under § 1415(e)(2) to grant "appropriate relief" as including the authority to grant injunctive relief, either after an unsuccessful and allegedly unfair administrative proceeding, or *prior to exhaustion of the state remedies if pursuing those remedies would be futile or inadequate.* [Citations omitted].

*Smith v. Robinson*, 468 U.S. at 1014 n. 17, 104 S.Ct. at 3469 n. 17 (emphasis added). The court went on to quote the principal author of the EHA, Senator Williams, that "exhaustion of the administrative procedures established under this part should not be required for any individual complainant filing a judicial action in cases where such exhaustion would be *futile either as a legal or practical matter.*" 121 Cong.Rec. 37416 (1975) (emphasis added). The House report for the 1986 EHA amendments also listed permissible exceptions to the exhaustion requirement when:

> (1) it would be *futile* to use the due process procedures ...; (2) an agency has adopted *a policy* or pursued a practice of general applicability that is *contrary to the law;* (3) it is *improbable that adequate relief* can be obtained by pursuing administrative remedies (e.g. the hearing officer lacks the authority to grant the relief sought)....

H.R.Rep. No. 296, 99th Cong., 1st Sess. 7 (1985) (emphasis added). *See also Honig v. Doe*, 484 U.S. 305, 108 S.Ct. 592, 606, 98 L.Ed.2d 686 (1988) ("It is true that judicial review is normally not available under § 1415(e)(2) until all administrative proceedings are completed, but as we have

previously noted, parents may bypass the administrative process where exhaustion would be *futile or inadequate*") (emphasis added). Our holding in *Ezratty*, 648 F.2d at 778, is also on point: Where an action is filed in district court pursuant to the EHA, considerations of agency expertise, accuracy and judicial economy suggest that the plaintiffs should exhaust their administrative remedies prior to pursuing a court action, even where it is the agency's fault that administrative remedies were not exhausted in the first place. We did note, however, that there are instances in which application of the exhaustion doctrine will not serve these interests, e.g. when the issue is *"a pure matter of law,"* or when exhaustion *"will work severe harm upon a litigant,"* or when "[f]urther agency proceedings may be *futile,* only delaying an ultimate resolution," and that "the legislative history of the Act reflects the understanding that exhaustion is not a rigid requirement." *Id.* at 774. *Accord Mrs. W. v. Tirozzi*, 832 F.2d 748, 759 (2d Cir.1987) ("courts seldom defer to an administrative agency when the issue involved is *purely a legal question* not involving either administrative experience or expertise," e.g. whether EHA provides a private right of action or whether other remedies under the EHA have been exhausted) (emphasis added).

**B. The Case of Christopher W.**

█ Given this case's current posture, we must ask if there is, under the EHA, federal court jurisdiction. In *David D. v. Dartmouth School Committee*, 775 F.2d at 418, we held that the provision that "[t]he complaints authorized by the [EHA] may be brought 'with respect to *any matter* related to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child,'" included both procedural and substantive violations. (Emphasis in original). And in *Town of Burlington v. Department of Education for the Commonwealth of Massachusetts*, 736 F.2d 773, 787 (1st Cir.1984), *aff'd,* 471

U.S. 359, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985), we held that the EHA's language that an administrative complaint may concern "any matter relating to the identification, evaluation, or educational placement of the child," includes complaints about local educational agency procedural violations of the Act as well as those of the states. Thus, the procedural violations that Christopher W. claims were committed by the local educational agency regarding his educational placement fit within the protectional provisions of § 1415 of the EHA. Consequently, Christopher W. would ordinarily have to exhaust the administrative remedies outlined in the EHA before proceeding with any action in the district court.

It is undisputed that Christopher W. did not pursue any administrative remedies, other than the initial EDGAR complaint on June 7, 1985.[4] Christopher W. has never challenged any individualized education program (IEP) that was developed for him. Throughout this protracted dispute, he has never requested a due process hearing, as delineated by the EHA, on any of the complaints he has raised. Therefore, we must determine if this case falls under one of the exceptions to the exhaustion doctrine that has been accepted by the courts.

*(1) Futility:*

In *Association for Retarded Citizens of Alabama v. Teague*, 830 F.2d 158 (11th Cir.1987), the court held: that in an action alleging violations of the EHA, plaintiffs were ordinarily required to first exhaust state administrative remedies before bringing action in federal court, *id.* at 160–61; and that plaintiffs produced no evidence to support their allegations of futility, relying only on conclusory statements that the available administrative remedies denied them due process because they were "a sham" or "incapable of resolving the issues." *Id.* at 162. Likewise, Christopher W. has produced no such evidence and has rested only on conclusory statements. In the many years that have already elapsed

---

**4.** Exhaustion of administrative remedies under EDGAR is different from exhaustion of administrative remedies under the EHA. *See Mrs. W. v. Tirozzi*, 832 F.2d 748, 757–58 (2d Cir.1987).

since Christopher W. was first subjected to disciplinary measures because of his behavior problems, he has never made a request for a due process hearing under the EHA. No evidence has been presented which suggests that asking for such a due process hearing would have been futile. Indeed, the Rhode Island Department of Education was quite receptive to Christopher W.'s initial complaints: (i) on November 8, 1985, it notified the Superintendent of Portsmouth Schools that the disciplinary actions the school had taken against Christopher W. violated the law because the MDT had not met to determine if there was a causal relationship between the misbehavior for which Christopher W. was being disciplined and his handicap; (ii) on November 29, 1985, it sent a letter to the Portsmouth School Committee stating that Christopher W.'s most recent suspension had again been made without benefit of evaluation and due process proceedings, and that the suspension must be stayed pending the outcome of the special education evaluation process and the due process review of that evaluation under the EHA; and (iii) on February 6, 1986, it sent a letter to the Portsmouth School Committee stating that it appeared that Christopher W.'s handicapping condition contributed to his inability to regularly attend school, that failing to give Christopher W. credit for any of his courses the previous year because he had missed 25% of those classes violated § 504 of the Rehabilitation Act, and that a full evaluation of Christopher W. should be conducted as soon as possible to identify an appropriate educational program for him. Far from any evidence of futility, the record indicates a sympathetic ear on the part of the state agency. It is probable that if a due process hearing had actually convened, the question of Christopher W.'s disability-misbehavior relationship could have been expeditiously decided and appropriate action taken in response to that decision, such as receiving credit for certain courses, expunging his record of evidence of his suspensions, receiving a more appropriate educational placement, or any other remedy deemed appropriate. Christopher W. offers no evidence to the contrary. The administrative remedies available certainly seem capable of resolving the issues involved, and any exhaustion exception based on futility is not warranted.

Christopher W.'s reliance on *Quackenbush v. Johnson City School District,* 716 F.2d 141 (2d Cir.1983), *cert. denied,* 465 U.S. 1071, 104 S.Ct. 1426, 79 L.Ed.2d 750 (1984), to support his argument of futility is misplaced. In that case, the school administrator allegedly was involved in forgery (alteration of a parental permission form) and deliberate interference with the EHA's procedural safeguards. *Id.* at 143. Because this false and malicious conduct by the school administrator resulted in the child being denied special education services despite the parent's attempt to obtain an evaluation, the court held that administrative remedies did not need to be exhausted. It found that the school maliciously prevented access to those very remedies, and therefore suit could be brought directly in the district court under § 1983. *Id.* at 147-48. Christopher W. has made no allegations of any such action on the part of the school system in his case, and his contention of futility based on this precedent consequently fails.

While other cases also conclude that under certain circumstances exhaustion of administrative remedies is not required before district court action may be taken, they are of no help to Christopher W. Such cases are limited to situations where the *school* has denied the plaintiff access to the administrative remedies. In *Manecke v. School Board of Pinellas County, Florida,* 762 F.2d 912, 918 (11th Cir.1985), *cert. denied,* 474 U.S. 1062, 106 S.Ct. 809, 88 L.Ed.2d 784 (1986), the court held that an action under § 1983 could be brought after the plaintiffs had requested a due process hearing relating to appropriate educational placement, and the *school board had denied access* to the EHA's "carefully tailored administrative and judicial mechanism." It should also be noted that the *Manecke* court concluded that the merits of the case, whether a handicapped child had received a free appropriate education, were not to be decided by the district court ab-

sent an administrative record of the sort contemplated by 20 U.S.C. § 1415. *Id.* at 923. In *Mrs. W. v. Tirozzi*, 832 F.2d at 759, the court held that "[e]xhaustion of EHA administrative remedies ordinarily required under § 1415(b)(2) and (c) is excused in the instant case because the pleadings indicate that *defendants refused to consider and resolve complaints* of system-wide violations of the EHA." (Emphasis added). In Christopher W.'s case, by contrast, the school board never denied, and indeed could not have denied, access to the administrative procedures, because Christopher W. never requested such access.

Nor does Christopher W.'s argument that he falls within the exhaustion exception because his parent was not informed of her right to a due process hearing constitute a sufficient basis for such a holding. Since Christopher W. had retained an attorney early on in this controversy (spring of 1985), we find lacking in persuasiveness any assertion of ignorance as to appropriate procedures to be followed. In addition, a letter was sent by Mr. Hilton, Regional Administrator of Special Education, to Christopher W.'s attorney on March 22, 1985, which apprised the attorney of all the actions which had been taken with respect to Christopher W. And, subsequent to Christopher W. filing the district court suit on December 6, 1985, he was on notice from several sources that he had failed to exhaust administrative remedies: defendant's Answer to the Complaint; defendant's Motions for Dismissal and Summary Judgment; and comments by the district court during its proceedings. Thus, the failure to specifically inform Christopher W.'s parent of her right to a hearing, does not, under the particular facts of this case, warrant an exhaustion exception based on the state agency itself preventing exhaustion of administrative remedies.

We conclude that Christopher W. has not presented any convincing arguments that pursuit of the prescribed administrative remedies would be futile.

### (2) *Severe harm to litigant:*

Nor does Christopher W. present any evidence to support a finding of severe or irreparable harm if a federal court does not take some sort of immediate action. Christopher W. is not currently under indefinite suspension or expulsion, which arguably might require immediate attention. At this point, he is basically requesting academic credit for past courses, the expunging from his permanent school record of any references to his suspensions, and injunctive relief prohibiting any future disciplinary sanctions against him without the EHA's procedural safeguards. Christopher W. does not explain what immediate harm will befall him if he is required to follow the administrative path, why administrative remedies cannot be pursued, or why immediate court action is required for the relief he seeks. An examination of the cases cited by Christopher W. does not support his contention that he is entitled to an exhaustion exception based on severe or irreparable harm.

In *Honig v. Doe*, 484 U.S. 305, 108 S.Ct. 592, 599, 98 L.Ed.2d 686 (1988), *aff'g Doe v. Maher*, 793 F.2d 1470 (9th Cir.1986), the school district had suspended a disabled student indefinitely, pending completion of an expulsion hearing, for disruptive conduct related to his disability, and had ignored plaintiff's request to convene an IEP meeting. *See Doe v. Maher*, 793 F.2d at 1477. The *Honig* court held that under the "stay-put" provision of the EHA, § 1415(e)(3), in which a handicapped child is to remain in his current educational placement pending completion of any review proceedings, the plaintiff could obtain injunctive relief in the district court pending completion of the IEP review process. *Honig*, 108 S.Ct. at 606. *Honig*, however, is inapposite to Christopher W.'s case. First, the *Honig* court issued an injunction pending completion of the administrative procedures. Christopher W. wants to bypass the administrative process altogether. Second, in *Honig*, the plaintiff had been suspended indefinitely at the time that the district court action was filed (a "change in educational placement" under the EHA). In the instant case, Christpher W. is not complaining about any currently existing indefinite suspension, which arguably

might require immediate court intervention, but rather is objecting to the policy of not receiving academic credit because of his disability-related misconduct. And most importantly, in *Honig,* the *school* refused a request to commence an administrative hearing. In the instant case the *plaintiff* has not requested an administrative hearing at all.

Similarly, in *S–1 v. Turlington,* 635 F.2d 342, 344–45 (5th Cir.), *cert. denied,* 454 U.S. 1030, 102 S.Ct. 566, 70 L.Ed.2d 473 (1981), where expelled handicapped students' requests for due process hearings were denied, the court upheld a preliminary injunction to ensure that plaintiffs would be provided the educational services and procedural rights required by the EHA. The court concluded that expulsion was a "change in educational placement" which triggered the procedural protections of the EHA, and that the students were entitled to a due process hearing to determine if their misconduct was related to their handicap. *Id.* So also, in *Kaelin v. Grubbs,* 682 F.2d 595, 598, 602 (6th Cir.1982). Following the expulsion of the plaintiff from school for disruptive behavior and denial of plaintiff's request for a due process hearing pursuant to § 1415 of the EHA, the court held that the procedural safeguards of the EHA came into play because expulsion (as opposed to temporary suspension), constitutes a change in educational placement within the meaning of the statute.

Christopher W. never requested a due process hearing, and the school board never refused to hold one. Moreover, the relief granted in the above cases was in response to student expulsions, and was directed at ensuring that a due process hearing take place. Injunctions were granted by the court to place the child back in the classroom pending completion of the due process hearing in order to avoid any harm to the child in the interim. Christopher W. is not currently under any expulsion order, and he, therefore, is not requesting relief from such an expulsion to avoid harm pending resolution of this dispute. Rather, Christopher W. wants to bypass the due process hearing procedures entirely and have the district court directly reach the merits of his case. We conclude that an exhaustion exception due to severe harm to the plaintiff, does not lie for Christopher W.

### (3) *Inadequate relief:*

Christopher W. has presented no evidence that the administrative process is not able to grant the relief he seeks. Indeed, the findings required in this case are precisely the types of issues in which administrative expertise and experience are most valuable. The state agency is much better equipped than the federal courts to determine issues such as the relationship between Christopher W.'s misbehavior and his handicap, and the amount of work he performed in classes for which he received no credit. Moreover, the granting of course credit and expunging the suspensions from Christopher W.'s permanent school record is certainly the type of relief within the hearing officer's province.

Christopher W.'s argument that bypassing the administrative procedures was justified because the suspensions would have been over before a due process hearing could have been convened and the hearing officer had no authority to issue prospective relief, is unpersuasive. The hearing officer surely could have found that Christopher W.'s absences were due to his handicap, that disciplining him for such misbehavior was prohibited by the EHA, and that perhaps a more appropriate IEP was required. If the hearing officer so found, the school committee could not legally defy the administrative ruling and repeat the same type of discipline in response to the same type of disability-related misconduct in the future. If the school persisted, then legal action could be pursued in federal court as permitted by the EHA. Thus, any contention of impracticability due to inadequate relief if Christopher W. pursues the administrative route also fails.

### (4) *Pure matter of law:*

Nor are the issues raised by Christopher W. ones of pure law. Indeed, the issues are extremely fact-specific and require the

development of a factual record before any review can intelligently be made.

## III. CONCLUSION

The EHA embodies a clear comprehensive scheme of procedural safeguards which are to be followed for any alleged violations of the statute. Administrative remedies are to be exhausted before recourse to the district courts is permitted. While the courts have recognized certain exceptions to this exhaustion requirement, the case of Christopher W. does not fit into any of them. We conclude that under the facts of this case, the plaintiff has resorted to an end-run of the administrative process established by the EHA without any legally cognizable justification.

We hold that Christopher W. must first exhaust the administrative remedies as described in § 1415 of the EHA, before he can bring an action in the district court. We therefore lack jurisdiction to reach the merits of this case.[5]

Affirmed.

■ Defendants-appellees have failed to file a timely brief in this appeal and have not established "good cause" for this tardiness as provided by Fed.R.App.P. 26(b). While we have considered the arguments made in appellees' brief in deciding this case, we think it appropriate to tax the costs of this appeal against appellees as a penalty for their late brief notwithstanding the fact that appellees prevail in this appeal. *See Hoffman v. Alside, Inc.,* 596 F.2d 822 (8th Cir.1979) (taxing costs against party for failure to file timely brief).

---

**5.** Our opinion makes it unnecessary to comment on or consider plaintiff's claim that the
district court judge should have recused himself.