Louis HARPER and Susan Harper,
parents and next friends of Cato
Harper, Plaintiffs,

v.

SCHOOL ADMINISTRATIVE
DISTRICT NO. 37,
Defendant.

Civ. No. 89–0280–B.

United States District Court,
D. Maine.

Dec. 15, 1989.

Richard L. O'Meara, Murray, Plumb & Murray, Portland, Me., for plaintiffs.

## MEMORANDUM OF DECISION AND ORDER DENYING PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER

GENE CARTER, Chief Judge.

### I.

This matter is before the Court for adjudication of the issues generated by Plaintiffs' Motion for a Temporary Restraining Order, filed herein on December 8, 1989 (Docket No. 2). The relief sought by Plaintiffs is the entry of a temporary restraining order enjoining Defendant from denying Cato Harper a free and appropriate education and requiring that Harper be placed forthwith at the Crotched Mountain Rehabilitation Center in accordance with the Individualized Education Program ("I.E.P.") dated November 16, 1989, pending any resolution of the administrative due process proceedings currently under way before the Maine Department of Education. *See* Complaint at 8–9. Such relief is sought pursuant to the provisions of 20 U.S.C. § 1415(e)(2).

The statutory format within which this case proceeds has been concisely described on two recent occasions by the Court of Appeals for the First Circuit, most recently in *Christopher W. v. Portsmouth School Committee*, 877 F.2d 1089, 1093–94 (1st Cir.1989). There, Judge Bownes said for the Court:

> The Education for All Handicapped Children's Act (EHA), provides procedural safeguards for a handicapped child and his or her parents with respect to the provision of a free appropriate public education. 20 U.S.C. § 1415. These include: an opportunity for the parents to examine all relevant records with respect to the identification, evaluation, and educational placement of the child, and the provision of a free appropriate public education to such child; an opportunity to obtain an independent educational evaluation of the child; written prior notice to the parents of any proposals or refusals

to change an educational placement; and an opportunity to present complaints relating to such educational placement. 20 C.F.R. § 1415(b)(1). Whenever a complaint is received, the parent "shall have an opportunity for an impartial due process hearing which shall be conducted by the State educational agency or by the local educational agency...." 20 U.S.C. § 1415(b)(2). If such a hearing is conducted by a local educational agency, a party may appeal to the State educational agency. 20 U.S.C. § 1415(c). Federal regulations mandate that a hearing must be held and a final decision must be reached not later than 45 days after the public agency receives a request for a hearing. 34 C.F.R. § 300.512. The statute also provides for civil action by an aggrieved party:

> *Any party aggrieved by the findings and decision* made under subsection (b) of this section who does not have the right to an appeal under subsection (c) of this section, and any party aggrieved by the findings and decision under subsection (c) of this section, *shall have the right to bring a civil action* with respect to the complaint presented pursuant to this section, which action may be brought in any State court of competent jurisdiction or *in a district court* of the United States without regard to the amount in controversy. In any action brought under this paragraph *the court shall receive the records of the administrative proceedings,* shall hear additional evidence at the request of a party, and basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate.

20 U.S.C. § 1415(e)(2) (emphasis added). The EHA further directs that a handicapped child "shall remain in [his or her] then current educational placement" pending completion of any review proceedings, unless the parents and state or local educational agency otherwise agree. 20 U.S.C. § 1415(e)(3). In 1986 Congress amended the EHA and added the following section:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, title V of the Rehabilitation Act of 1973, or other Federal statutes protecting the rights of handicapped children and youth, except that *before the filing of a civil action under such laws* seeking relief that is also available under this subchapter, *the procedures,* under subsections (b)(2) and (c) of this section *shall be exhausted to the same extent as would be required had the action been brought under this subchapter.*

20 U.S.C.A. § 1415(f) (West Supp.1988) (emphasis added).

Thus, the language of § 1415 of the EHA indicates that *the administrative procedures outlined in the statute are to be pursued prior to recourse to the district courts.* The exhaustion of administrative remedies doctrine has long been held to mean that *"no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted."* *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50–51, 58 S.Ct. 459, 463–64, 83 L.Ed. 638 (1938). This doctrine enables the agency to develop a factual record, to apply its expertise to the problem, to exercise its discretion, and to correct its own mistakes, and is credited with promoting accuracy, efficiency, agency autonomy, and judicial economy.... [Citations omitted.] But, where agency proceedings will be futile, such benefits do not accrue. Therefore, the exhaustion doctrine "is not to be applied inflexibly." *McGee v. United States*, 402 U.S. 479, 483, 91 S.Ct. 1565, 1568, 29 L.Ed.2d 47 (1971).

(Emphasis added.) *See also Ezratty v. Commonwealth of Puerto Rico*, 648 F.2d 770, 772 (1st Cir.1981) (Breyer, J.).

## II.

It is alleged in this case that Plaintiffs' dependent, Cato Harper, is a fifteen-year-old boy who is handicapped within the meaning of the provisions of 20 U.S.C.

§ 1401(a)(1) and 34 C.F.R. § 300.5, and that he is an exceptional child within the meaning of the Maine implementing statute, 20–A.M.R.S.A. § 7001(2) and § 3.1 of the Maine Special Education Regulations. Complaint, ¶ 2, at 1–2. It is further alleged that Cato Harper has attended classes as an eighth-grader at the Addison public schools as a qualified participant in the special education program under the aforesaid statutes and regulations. *Id.,* ¶ 7, at 3. Apparently, pursuant to the Act, a pupil evaluation team ("P.E.T.") developed Cato Harper's I.E.P. for the 1989–90 academic year. That program called for Cato to continue to be placed in public school at the regional high school of Defendant, Narraguagus High School in Harrington, Maine, as a ninth-grader. It provided that he was to receive certain special education and related services as set forth in the I.E.P. *Id.,* ¶ 7, at 3.

After formulation of the P.E.T., it appears from the Complaint that Cato Harper began to suffer from severe psychological difficulties and began to express suicidal thoughts and intentions. *Id.,* ¶ 8, at 3–4. He was evaluated by his family physician, Dr. Crowley, and was admitted to the Eastern Maine Medical Center in Bangor for treatment of his suicidal ideation and depression. *Id.,* ¶ 9, at 4.

He was transferred to The Children's Hospital in Boston on July 27, 1989, to afford him the opportunity to be treated in a teenage psychiatric ward. *Id.* He remained at the latter hospital until September 21, 1989 under the care of Dr. Tofler. During that period of time, there was an apparent, unexplained intervention in his diagnosis, care, and treatment by the Bureau of Children With Special Needs in Maine's Department of Mental Health and Mental Retardation, which agreed, it is alleged, to fund a sixty-day psychological and educational evaluation of Cato Harper at the Crotched Mountain Rehabilitation Center in Greenfield, New Hampshire. *Id.,* ¶ 12, at 5. In accordance with the initiative, Cato Harper was transferred to Crotched Mountain on September 21, 1989. It is not asserted that Defendant played any role in this plan or that it was consulted with respect to its initiation.

While Harper was at Children's Hospital, Defendant convened a P.E.T. meeting on September 7, 1989, apparently to extend further consideration to Cato Harper's educational placement for the 1989–90 academic year in light of developments which had occurred since the last occasion that a P.E.T. meeting had been held with respect to him. *Id.,* ¶ 13, at 5–6. Plaintiffs requested at the meeting that Harper be placed according to the recommendations of Dr. Tofler. Affidavit of Susan Harper, ¶ 9, at 3. It is not specifically alleged what recommendations Dr. Tofler was making as of September 7, 1989. This request was rejected by Defendant's special education director, who requested an opportunity to review further data in respect to the recommendations of Children's Hospital staff in the matter. *Id.*

While Cato Harper was at the Crotched Mountain facility, Plaintiffs allege they made two additional attempts to reconvene the P.E.T. meeting to achieve a determination of Harper's educational placement, and it is alleged that Defendant has refused to reconvene the P.E.T. meeting or to take any other steps to identify an appropriate educational placement for Harper during the 1989–90 academic year. Complaint, ¶ 13, at 5. It is alleged that Plaintiffs requested an impartial due process hearing before the Maine Department of Education, pursuant to the provisions of section 1415(b)(2) of the Act and its supporting federal regulations and state statute and regulations. *Id.* at 6. It is alleged that the hearing is scheduled, as of the date of filing of the Complaint and Motion for Temporary Restraining Order, for December 14 and 15, 1989. *Id.,* ¶ 13, at 5–6.

While Harper was at the Crotched Mountain facility, the staff at that facility apparently held a meeting to develop an appropriate I.E.P. for Harper. *Id.,* ¶ 14, at 6. Defendant's representatives refused to attend such meeting. *Id.,* ¶ 14, at 6. The Crotched Mountain staff, it is alleged, issued an I.E.P. dated November 16, 1989, recommending that Harper receive a resi-

dential placement at the Crotched Mountain facility for a minimum period of six to twelve months. *Id.* Defendant has refused to accept that recommendation or to comply with the I.E.P. in that respect. *Id.*

It is further alleged that Harper returned to his home in Maine in mid- to late November 1989, and that he remains at home now. *Id.*, ¶ 15, at 6. The allegations of the Complaint assert that Harper continues to be subject to suicidal thoughts and has been emotionally and behaviorally disturbed since leaving the Crotched Mountain facility, that those who have diagnosed and treated him in the interim recommend his prompt placement in accordance with the I.E.P. developed by the Crotched Mountain staff, that the school facilities at Narraguagus High School are inappropriate as a learning and treatment milieu for Harper, that his assignment as a student to Defendant's public school environment will occasion harm to Harper, and that harm will be occasioned to Harper by delay in accomplishing his placement, pursuant to the I.E.P. of the Crotched Mountain staff, at the Crotched Mountain facility. *Id.*, ¶¶ 15–17, at 6–7.

### III.

■ The Court is satisfied, having reviewed all of the supporting papers filed in this matter, that the allegations recited above are adequately supported by the series of affidavits of Susan Harper, Dr. Tofler, Robert Fortgang, Jean Harding, Robert Keteyian, and Dr. Crowley (Docket Nos. 3–8). On the basis of the procedural path disclosed by those allegations, the Court is satisfied that it is without subject matter jurisdiction over Plaintiffs' Complaint and, therefore, over the Motion for Temporary Restraining Order, because of the failure of Plaintiffs to exhaust their administrative remedies as required by 20 U.S.C. § 1415(b)(1) and (2), (c), (e)(2), and (f).

■ It is the intent of Congress that it is to be preferred that claimants exhaust their administrative remedies, *see McKart v. United States*, 395 U.S. 185, 194, 89 S.Ct. 1657, 1662, 23 L.Ed.2d 194 (1969). As

the Court of Appeals for this circuit has noted, however, Supreme Court doctrine does not require an inflexible application of the exhaustion requirement. *Christopher W.*, 877 F.2d at 1094; *see McGee v. United States*, 402 U.S. 479, 483, 91 S.Ct. 1565, 1568, 29 L.Ed.2d 47 (1971). The exceptions recognized in this circuit under the cases of *Christopher W.*, 877 F.2d 1094–95, and *Ezratty*, 648 F.2d at 774–75, are those where: (1) pursuit of the administrative remedies provided would be a futile task, in either legal or practical terms; (2) to require such pursuit would occasion severe harm to the litigant; (3) there is inadequate legal relief pursuant to the administrative procedures available; and (4) the issue raised is a "pure matter of law."

It is to be noted that Defendant, in May of 1989, established an I.E.P. for Cato Harper. It is that I.E.P. which dictates the presumptively effective "current educational placement" of Harper pursuant to 20 U.S.C. § 1415(e)(3). Plaintiffs' Complaint arises out of the fact that it is alleged that significant developments with respect to Harper's condition and his treatment and educational needs have occurred *since that I.E.P. was prepared.* Although Plaintiffs allege efforts to cause Defendant to convene a P.E.T. meeting for purposes of revising the I.E.P., or at least consideration of the need to do so, such a meeting has not yet been completed. Thus, there has been promulgated no official action in respect to Harper's I.E.P. by Defendant in consequence of Plaintiffs' contentions about changes in Harper's condition and needs.

The essence of Plaintiffs' position herein is that there is not a validly final I.E.P. which recognizes Harper's current requirements. It is the effort to obtain a P.E.T. meeting to address that matrix of issues which Plaintiffs claim has been frustrated by the action of Defendant and that the P.E.T. meeting should, therefore, be bypassed by this Court, at least on an immediate, interim basis. Yet, it is precisely the type of task accomplished by a P.E.T. meeting that the Court of Appeals has recognized is best served by the exhaustion doc-

trine in the "interests of accuracy, efficiency, agency autonomy and judicial economy." *Ezratty*, 648 F.2d at 774. As the Court there noted,

> working out a specific and final IEP (which was not done) calls for expertise and discretion; and, an initial independent review of the IEP at an agency level would serve the major purposes of the exhaustion doctrine. Indeed, Congress specifically mandated such a review in 20 U.S.C. § 1415; and, a review of the cases shows that it has helped to clarify issues even when it has not resolved them.

*Id.* at 775. Although Plaintiffs allege that Defendant has taken positions that have delayed, in the view of Plaintiffs, a timely final determination of an appropriate I.E.P., the record here does not display any reason to believe that those actions by Defendant were taken for inappropriate reasons or were intended to frustrate the orderly working out of the administrative process. Indeed, the scheduling of the due process hearing pursuant to subsection (e)(2) is persuasive evidence that the administrative process is going forward with deliberate speed.

■ There is no indication that there is prejudgment of the issues to be considered by Defendant in reevaluating the existing I.E.P. or the issues that will be considered in the due process hearing now *in medias race*. Thus, there is no showing that the effort to achieve a reconsideration of the existing I.E.P. in the administrative process will be futile.

■ Plaintiffs' assertion that delay in causing Harper to be placed forthwith at the Crotched Mountain facility while the administrative process plays out will occasion severe harm to him does not, in the present status of this record, justify exempting this case from the exhaustion requirement. This is so because the allegations of the Complaint and the supporting materials do not disclose that this issue of the need for prompt action *has ever been presented to Defendant in the course of the administrative proceedings to date.* Further, there is no reason to believe that such an issue cannot be presented either in the course of the due process hearing now going forward or by a separate request to Defendant to promptly convene a new P.E.T. meeting. That issue, like the question of the requirement of an appropriate I.E.P., is one best dealt with through administrative agency expertise and the resources available in the course of the administrative process from skilled health, disability, rehabilitation, and educational professionals. It is precisely the type of issue that should be first addressed in the administrative process before resort is had to this Court in an effort to accomplish a result that bypasses administrative consideration of this significant issue. In the event that the administrative process is *unduly* delayed because of an *unwarranted* refusal to consider the need for prompt action in the course of the administrative process, or an attempt to do so is subverted by *inappropriate* activity on the part of Defendant, then will be time enough to seek the invocation of the jurisdiction of this Court to remedy that then determinable situation.

■ Further, there is no sufficient showing made on this record that there is not adequate relief available through the administrative process to accomplish an appropriately prompt review of the I.E.P. for Harper with a full consideration of all pertinent developments in his condition and requirements since the I.E.P. was formulated in May 1989, and to achieve such a result on a basis that is consistent with the needs of the administrative process and the best interests of Harper himself.

In this latter respect, it should be noted that the Court's ability to provide adequate relief at this juncture by means of a temporary restraining order is severely in question. The most that this Court could do at this juncture would be to enter some kind of temporary restraining order that would require particular action (not here defined with particularity by either the motion or the Complaint) for a maximum period of ten days. The Court visualizes that Plaintiffs seek some action that would result in Harper being forthwith removed to the Crotched Mountain facility for a period of

ten days. However, depending upon the result of further proceedings in this case, he might well be removed from that facility later and returned to his residence in Machias. The Court has a strong view that such a result would occasion Harper much greater damage than any benefit it would provide to him. The Court's view is based upon the indications of the skilled medical and rehabilitation professionals who have provided affidavits in this case to say that Harper's *primary need* at present is for a stable, structured environment which can be confidently perceived by him to be a durable *milieu* within which his future needs can be addressed with certainty.

■ Finally, it is clear that the issues involved in reevaluating the May I.E.P., the currently presumptively effective I.E.P. governing Harper's placement, and determining what, if any, modification of his placement is required, and the time frame within which such modified placement should be accomplished, are largely factually based and are peculiarly within the expertise of professionals in the various disciplines who will contribute through the administrative process to the resolution of those issues. They clearly are not "pure matters of law" that can be resolved by a judge in a factual vacuum.

### IV.

It thus appears clear that in the present status of this matter, there is no basis upon which to fit this case into any of the recognized exceptions to the requirement of exhaustion of administrative remedies as articulated in *Christopher W.* and *Ezratty.* Such exhaustion is clearly appropriate here. Accordingly, Plaintiffs' Motion for Temporary Restraining Order is hereby DENIED, and this action is DISMISSED without prejudice to its reassertion.

So ORDERED.