**Mary HOEFT, individually and as a parent of Donovan Hoeft; et al., on behalf of themselves and all others similarly situated, Plaintiffs–Appellants,**

v.

**TUCSON UNIFIED SCHOOL DISTRICT, a political subdivision of the State of Arizona; C. Diane Bishop, in her capacity as Superintendent of Public Instruction for the State of Arizona, Defendants–Appellees.**

No. 90–16358.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 6, 1991.

Decided June 17, 1992.

Thomas J. Berning, Tucson, Ariz., for plaintiffs-appellants.

Grant Woods, Atty. Gen. by William V. Hornung, Asst. Atty. Gen., for defendants-appellees State of Ariz. and C. Diane Bishop, in her capacity as Superintendent of Public Instruction for the State of Ariz.

Before: BOOCHEVER and NORRIS, Circuit Judges, and GILLIAM, District Judge.*

BOOCHEVER, Circuit Judge:

This is an appeal from the district court's dismissal of a class action suit brought by parents of disabled students alleging violations of the federal Individuals with Disabilities Education Act and state education law. The plaintiffs, parents of four disabled children, on behalf of themselves, their children, and a class of similarly situated children, sought declaratory and injunctive relief against the Tucson Unified School District (Tucson Unified) and Arizona State Superintendent of Public Instruction C. Diane Bishop (the state superintendent). They alleged that Tucson Unified has formal, written policies and informal, de facto policies concerning extended school year services which operate to deny children with disabilities an appropriate, individually tailored education, in violation of the Education of the Handicapped Act, now known as the Individuals with Disabilities Education Act (IDEA),[1] 20 U.S.C. §§ 1400–1485 (1988 & Supp.1990), and state law. The district court dismissed their complaint based on the plaintiffs' failure to exhaust administrative remedies.

In deciding this case, we are called upon to determine whether parents must exhaust administrative remedies when they

---

* Honorable Earl B. Gilliam, United States District Judge for the Southern District of California, sitting by designation.

1. Congress renamed the statute effective October 30, 1990. Education of the Handicapped Act Amendments of 1990, Pub.L. No. 101–476, § 901(a), 104 Stat. 1103, 1141–42. These amendments also changed terminology used in the statute and made several substantive amendments not at issue in this case. We use the statute's current name and terminology in this opinion.

mount a class action challenge to alleged local school district policies, as opposed to challenging their children's individualized education programs formulated pursuant to these policies. We conclude that under the facts of this case, they must.

## STATUTORY AND REGULATORY BACKGROUND

Before addressing the facts and legal issues in this case, we provide a brief overview of the substantive and procedural provisions of the IDEA and related federal regulations. The IDEA is a comprehensive educational scheme, conferring on disabled students a substantive right to public education and providing financial assistance to enable states to meet their educational needs. *Honig v. Doe,* 484 U.S. 305, 310, 108 S.Ct. 592, 597, 98 L.Ed.2d 686 (1988). Federal funding is conditioned upon state compliance with the IDEA's extensive substantive and procedural requirements. To qualify for federal funds, the state must have in effect "a policy that assures all children with disabilities the right to a free appropriate public education." 20 U.S.C. § 1412(1). Parental involvement is a central feature of the IDEA. Parents participate along with teachers and school district representatives in the process of determining what constitutes a "free appropriate public education" for each disabled child. This process culminates in the formulation of an individualized education program, tailored to the child's unique needs. 20 U.S.C. §§ 1401(a)(18), (20).

To guarantee that parents have "an opportunity for meaningful input into all decisions affecting their child's education," the IDEA prescribes an elaborate system of procedural safeguards. *Honig,* 484 U.S. at 311, 108 S.Ct. at 598. Parents must be notified in writing of changes the school district proposes or refuses to make in their child's educational program. § 1415(b)(1)(C). This notice must contain a description of procedural rights available to parents for challenging the district's decision and an explanation of the reasons for the decision. 34 C.F.R. § 300.505 (1991). Parents have the right to examine their child's educational records and obtain an independent evaluation of their child. 20 U.S.C. § 1415(b)(1)(A). Moreover, the IDEA requires that states guarantee parents the right to seek review of any decisions concerning their child's education which they consider inappropriate. This right includes an opportunity to bring complaints about "any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." § 1415(b)(1)(E). The preliminary forum for parent complaints is an "impartial due process hearing" conducted by the local school district or by the state. § 1415(b)(2). If the hearing is conducted by the local school district, the parents may appeal the decision to the state educational agency. § 1415(c). Parents dissatisfied by the state's decision may appeal by filing a civil action in federal or state court. § 1415(e)(2). Arizona has established due process procedures pursuant to these requirements. Ariz.Admin.Code § R7–2–405 (1989).

In addition to the IDEA's procedural safeguards for ensuring parental involvement in the educational decisionmaking process, federal regulations provide an administrative mechanism for ensuring state and local compliance with federally funded education programs, including the IDEA. The Education Division General Administrative Regulations (EDGAR), 34 C.F.R. §§ 76.1–76.910 (1991), require states to adopt a formal procedure for receiving and resolving complaints that the state or local education agency is violating the IDEA or its regulations. 34 C.F.R. § 76.780. The state EDGAR complaint procedure is to include a time limit of 60 days for the state to investigate and resolve complaints, to be extended only under "exceptional circumstances." 34 C.F.R. § 76.781(a), (b). A complainant dissatisfied with the state's disposition of an EDGAR complaint may request review of the state's decision by the U.S. Secretary of Education. 34 C.F.R. 76.781(c). Arizona has in place a complaint procedure as required by EDGAR. Ariz.Admin.Code § R7–2–804 (1989).

Against this background of substantive and procedural rights, we turn to the facts and proceedings in this case.

## FACTUAL AND PROCEDURAL BACKGROUND

The children of the named plaintiffs are disabled students who receive special education and related services from Tucson Unified, but who do not receive the extended school year services to which their parents believe they are entitled. Extended school year programming is educational programming which extends instruction beyond the conventional school year to prevent serious regression over the summer months. *See generally Johnson v. Independent School Dist. No. 4,* 921 F.2d 1022, 1027–28 (10th Cir.1990) (per curiam) (discussing extended year programming purposes and eligibility criteria), *cert. denied,* — U.S. —, 111 S.Ct. 1685, 114 L.Ed.2d 79 (1991). Because this case is before us following dismissal on the pleadings,[2] for purposes of our review we take as true the following factual allegations.

Donovan Hoeft is a nine-year-old child with multiple disabilities who is blind and mentally retarded. Tucson Unified provided him with four weeks of extended year programming during the summers of 1986 and 1987. Although Donovan's mother requested an eight-week extended year program for the summer of 1988, Tucson Unified provided Donovan with only a four- to five-week program. Tucson Unified denied Donovan extended year programming during the summer of 1989. Donovan's mother did not seek administrative review of the educational program Tucson Unified formulated for her son.

Garrett Bolton is a nine-year-old autistic child with multiple disabilities. Tucson Unified provided him with four weeks of extended year programming during the summer of 1986, but refused his parents' request for additional extended year programming. By the fall of 1986, he had significantly regressed. When Tucson Unified proposed extended year services for the summer of 1987 which Garrett's parents considered inadequate, they enrolled him in a private summer program. Tucson Unified denied the Boltons' request for extended year services for the summer of 1988 because Garrett had shown no regression after the previous summer. The Boltons again enrolled him in a private program in the summer of 1988, and for the summer of 1989 Tucson Unified again denied the Boltons' request for extended year services based on his lack of regression during the previous summer. The Boltons did not appeal any of the decisions Tucson Unified made concerning their son's educational program. They had requested a due process hearing to contest the denial of extended year services for the summer of 1989, but withdrew their request when a private agency offered an alternative summer program.

Jason Koch is a fourteen-year-old child with serious emotional disabilities. Tucson Unified denied his parents' request for extended year programming for the summer of 1988 because of a lack of empirical data indicating significant regression in academic skills over the previous summer. The parents placed Jason in a three-month summer program outside the district. Based on Jason's lack of regression the following fall, Tucson Unified again denied him extended year programming for summer 1989. Jason's parents at no time sought administrative review of Tucson Unified's denial of extended year services.

Brandon Wright is a seven-year-old child with cerebral palsy, mental retardation, and a seizure disorder. Tucson Unified

---

**2.** The defendants moved to dismiss after answering the complaint, and we therefore construe their motions to dismiss as motions for judgment on the pleadings. *See Aldabe v. Aldabe,* 616 F.2d 1089, 1093 (9th Cir.1980). In reviewing the defendants' motions under Fed. R.Civ.P. 12(c), the district court views the facts as presented in the pleadings in the light most favorable to the plaintiffs, accepting as true all the allegations in their complaint and treating as false those allegations in the answer that contradict the plaintiffs' allegations. *See Hal Roach Studios v. Richard Feiner & Co.,* 896 F.2d 1542, 1550 (9th Cir.1990) ("[T]he allegations of the non-moving party must be accepted as true, while the allegations of the moving party which have been denied are assumed to be false.").

refused his parents' request for extended year programming for the summers of 1988 and 1989 because of lack of empirical data of significant regression. Tucson Unified, however, made no attempt to collect the data and dismissed the opinions of Brandon's teachers, parents, and independent experts who believed he required extended year services. At no time did Brandon's parents seek administrative review of Tucson Unified's denial of extended year services.

Each of the named plaintiffs asked Tucson Unified to provide formal written notice of the denial of extended year services, including a full explanation of parents' procedural rights and the basis for the denial of services. Tucson Unified failed to provide such notice. The complaint, however, does not allege that the plaintiffs were unaware of their procedural rights or prejudiced by the lack of an adequate notice. On June 24, 1989, the plaintiffs filed a complaint with the Arizona Department of Education pursuant to the state's EDGAR complaint procedure, Ariz.Admin.Code § R7–2–804, alleging that Tucson Unified was violating the IDEA because of its extended year policies and its failure to provide formal written notice of denial of extended year services. The state did not respond within the prescribed 60–day time limit for investigation and resolution of EDGAR complaints,[3] and on October 11, 1989, plaintiffs filed this suit in federal district court.

Like their EDGAR complaint, the plaintiffs' federal court complaint attacks Tucson Unified's policies concerning extended school year programming. Specifically, the complaint challenges the criteria Tucson Unified uses to determine eligibility for extended year services, the type and amount of extended year programming provided to eligible students, and Tucson Unified's failure to comply with the IDEA's notification requirements. The complaint seeks a declaration that Tucson Unified and the state superintendent are in violation of the IDEA, and seeks an injunction requiring Tucson Unified and the state superintendent (1) to develop "appropriate criteria, as determined by [the] court, for evaluating each child's need for extended year programming," (2) to fund extended year programs adequately, and (3) to afford parents all the procedural rights to which they are entitled under the IDEA. Complaint, pp. 17–18.

Arguing that the plaintiffs had not exhausted the administrative procedures required by the IDEA, the defendants moved to dismiss the complaint for lack of subject matter jurisdiction. On August 31, 1990, the district court granted the motions to dismiss, and the plaintiffs timely appealed. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

## DISCUSSION

### I. *Standard of Review*

As a preliminary matter, we must resolve a dispute between the parties concerning the proper standard governing our review of the district court's dismissal for failure to exhaust administrative remedies. The defendants contend that the decision to require exhaustion rests within the discretion of the district court, while the plaintiffs argue that requiring or excusing exhaustion under the IDEA is a matter of law and therefore subject to de novo review.

When a statute does not provide for exhaustion of administrative remedies, a trial court may require exhaustion in the exercise of its discretion. In such circumstances, our review is for abuse of discretion. *Southeast Alaska Conservation Council, Inc. v. Watson*, 697 F.2d 1305, 1309 (9th Cir.1983). The IDEA, however, does provide administrative appeal procedures to be pursued before seeking judicial review. 20 U.S.C. § 1415; *see e.g.*, *Smith v. Robinson*, 468 U.S. 992, 1011–12, 104 S.Ct. 3457, 3468, 82 L.Ed.2d 746 (1984). Yet this exhaustion requirement is not a

---

**3.** The state superintendent's answer indicates that after the suit was commenced the state notified the plaintiffs of its request for an extension of time to resolve their EDGAR complaint.

The state completed its investigation by the time the state superintendent answered the federal complaint on November 20, 1989, but at that time had not yet completed the written report.

rigid one, and is subject to certain exceptions. *See Kerr Ctr. Parents Ass'n v. Charles,* 897 F.2d 1463, 1469 (9th Cir.1990). In determining whether these exceptions apply, our inquiry is whether pursuit of administrative remedies under the facts of a given case will further the general purposes of exhaustion and the congressional intent behind the administrative scheme. *See Bowen v. City of New York,* 476 U.S. 467, 484, 106 S.Ct. 2022, 2032, 90 L.Ed.2d 462 (1986); *McKart v. United States,* 395 U.S. 185, 193, 89 S.Ct. 1657, 1662, 23 L.Ed.2d 194 (1969). Inasmuch as the application of the IDEA's statutory exhaustion requirement and the exceptions to it is predominantly a question of law, our review is de novo. *United States v. McConney,* 728 F.2d 1195, 1201 (9th Cir.) (en banc), *cert. denied,* 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

## II.  *Exhaustion Under the IDEA*

■  The policies underlying the IDEA's administrative procedures reflect both general principles of administrative law and the educational philosophy of the IDEA. The exhaustion doctrine embodies the notion that "agencies, not the courts, ought to have primary responsibility for the programs that Congress has charged them to administer." *McCarthy v. Madigan,* — U.S. —, 112 S.Ct. 1081, 1086, 117 L.Ed.2d 291 (1992). The IDEA's exhaustion requirement also recognizes the traditionally strong state and local interest in education, as reflected in the statute's emphasis on state and local responsibility. The IDEA charges local educational agencies with the responsibility of establishing programs to provide disabled students with a "free appropriate public education." *See* 20 U.S.C. § 1414(a). At the same time, the states have primary responsibility for ensuring that local educational agencies comply with the requirements of the IDEA. *See* 20 U.S.C. §§ 1412(6), 1414(b). Exhaustion of the administrative process allows for the exercise of discretion and educational expertise by state and local agencies, affords full exploration of technical educational issues, furthers development of a complete factual record, and promotes judicial efficiency by giving these agencies the first opportunity to correct shortcomings in their educational programs for disabled children. *See generally McKart,* 395 U.S. at 193–95, 89 S.Ct. at 1662–63 (discussing policies reflected by exhaustion doctrine). The Sixth Circuit has summarized the IDEA's exhaustion rationale as follows:

> States are given the power to place themselves in compliance with the law, and the incentive to develop a regular system for fairly resolving conflicts under the [IDEA]. Federal courts—generalists with no experience in the educational needs of handicapped students—are given the benefit of expert factfinding by a state agency devoted to this very purpose.

*Crocker v. Tennessee Secondary School Athletic Ass'n,* 873 F.2d 933, 935 (6th Cir. 1989).

The IDEA's exhaustion requirement is not absolute, however, for there are situations in which exhaustion serves no useful purpose. Courts universally recognize that parents need not exhaust the procedures set forth in 20 U.S.C. § 1415 where resort to the administrative process would be either futile or inadequate. *See, e.g., Honig,* 484 U.S. at 327, 108 S.Ct. at 606; *Smith v. Robinson,* 468 U.S. at 1014 n. 17, 104 S.Ct. at 3469 n. 17; *Kerr Ctr. Parents,* 897 F.2d at 1469; *Wilson v. Marana Unified School Dist. No. 6,* 735 F.2d 1178, 1181 (9th Cir. 1984). Excusing exhaustion in cases of futility and inadequacy is based both on general exhaustion principles, *see* 5 Jacob Stein, Glenn Mitchell & Basil Mezines, *Administrative Law* § 49.02 (1992), and on the legislative history of the IDEA. In addition to these two exceptions, the legislative history notes a third exception:

> [T]here are certain situations in which it is not appropriate to require the use of due process and review procedures set out in [20 U.S.C. § 1415(b) and (c) ] of the [IDEA] before filing a law suit.
>
> These include complaints that: (1) it would be futile to use the due process procedures ...; (2) *an agency has adopted a policy or pursued a practice of general applicability that is con-*

*trary to the law;* (3) it is improbable that adequate relief can be obtained by pursuing administrative remedies (e.g., the hearing officer lacks the authority to grant the relief sought)....

H.R.Rep. No. 296, 99th Cong., 1st Sess. 7 (1985) (emphasis added).[4]

The plaintiffs argue that the administrative process the IDEA prescribes for appealing a child's individualized education program is inapplicable in this case, because they challenge barriers erected by Tucson Unified which apply across the board to all children who require extended year services to benefit from their education. Their complaint, they contend, thus falls within two exceptions to the IDEA's exhaustion requirement: the "policy or practice of generalized applicability" exception noted in the legislative history, and the generally recognized "inadequacy" exception.[5] We address each in turn.

### III. *Policy or Practice of Generalized Applicability*

Plaintiffs' complaint challenges a number of formal and informal policies under which Tucson Unified has denied extended year services to individual students. Structuring a complaint as a challenge to policies, rather than as a challenge to an individualized education program formulated pursuant to these policies, however, does not suffice to establish entitlement to a waiver of the IDEA's exhaustion requirement. Plaintiffs must demonstrate in addition that the underlying purposes of exhaustion would not be furthered by enforcing the requirement. This they have failed to do.

### A

Initially, we are unpersuaded by the authorities plaintiffs cite in support of their contention that whenever the challenge involves policies applied to all students, exhaustion is excused. These cases are inapposite inasmuch as they involve statutory violations so serious and pervasive that basic statutory goals are threatened—violations on a qualitatively different scale than those alleged here. *See, e.g., J.G. v. Board of Educ. of Rochester City School Dist.,* 830 F.2d 444, 446 (2d Cir.1987) (practices amounting to wrongdoing "inherent in the program"); *New Mexico Ass'n for Retarded Citizens v. New Mexico,* 678 F.2d 847, 851 (10th Cir.1982) ("[T]he gravamen of the Association's lawsuit is that the entire special education service system offered by the State is infirm."). Serious due process violations in most of these cases have the practical effect of denying the plaintiffs a forum for their grievances, and thus exhaustion would be futile. *See McNary v. Haitian Refugee Ctr.,* — U.S. —, 111 S.Ct. 888, 112 L.Ed.2d 1005 (1991) (INS practices challenged as precluding meaningful administrative review of denials of amnesty applications); *Bowen,* 476 U.S. at 485–86, 106 S.Ct. at 2032–33 (secrecy of Social Security Administration policy precluded claimants from challenging it through the administrative process); *Mrs. W. v. Tirozzi,* 832 F.2d 748, 752 (2d Cir. 1987) (statewide due process violations, including state's failure to resolve parental complaints about compliance, failure to enact EDGAR complaint procedure for addressing such complaints, and failure to afford due process hearings for students at residential correctional school); *J.G. v. Board of Educ.,* 830 F.2d at 446–47 (alleging facial, systemic IDEA violations of fail-

---

**4.** This House Report concerned the 1986 amendments to the IDEA, which restored the availability of remedies under the federal Constitution and section 504 of the Rehabilitation Act of 1973, as amended in 29 U.S.C. § 794 (1988), for deprivation of disabled students' education rights, after the Supreme Court's restrictive decision in *Smith v. Robinson,* 468 U.S. 992, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984), that such remedies were unavailable. *See* Handicapped Children's Protection Act of 1986, Pub.L. No. 99–372, 100 Stat. 796. At the same time Con-

gress reaffirmed the necessity of exhausting the IDEA's administrative procedures before seeking judicial relief on these alternate theories. H.R.Rep. No. 296, at 7.

**5.** The plaintiffs do not contend on appeal that exhaustion would be futile. We therefore do not consider whether this case falls within the "futility" exception to the IDEA's exhaustion requirement.

ing to provide pre-placement evaluations, notice, and due process hearings to class members). Moreover, in many of these cases, the challenged policies or practices are enforced at the highest administrative level, so that the only meaningful remedy is through the courts. *See Haitian Refugee Ctr.*, 111 S.Ct. at 892–93; *Bowen*, 476 U.S. at 485, 106 S.Ct. at 2032; *Tirozzi*, 832 F.2d at 752–53; *New Mexico Ass'n for Retarded Citizens*, 678 F.2d at 851.

Plaintiffs' complaint, on the other hand, focuses on the shortcomings of a particular component of Tucson Unified's special education program—extended school year services. The alleged violations do not rise to a truly systemic level in the sense that the IDEA's basic goals are threatened on a system-wide basis. Moreover, although the complaint alleges procedural violations of the IDEA because the written notice provided to parents was inadequate in several respects, even construed most favorably to plaintiffs, the allegations do not suggest that these procedural violations effectively deprived plaintiffs of an administrative forum. *See Bowen*, 476 U.S. at 485, 106 S.Ct. at 2032 (cautioning that "our holding today does not suggest that exhaustion is to be excused whenever a claimant alleges an irregularity in the agency proceedings"); *see, e.g., Christopher W. v. Portsmouth School Comm.*, 877 F.2d 1089, 1091, 1095–97 (1st Cir.1989) (lack of notice of procedural rights does not excuse exhaustion where plaintiff was represented by counsel prior to initiating suit and filed an EDGAR complaint, but never challenged individualized education program). Rather, it appears from the allegations in the complaint that the plaintiffs' failure to pursue administrative remedies was entirely voluntary.

### B

Because we reject plaintiffs' contention that exhaustion is excused automatically whenever a policy underlying an individual education program is challenged as unlawful, we must interpret the proper scope of the exception articulated in the legislative history for challenges to generally applicable policies that are "contrary to the law." We find instructive use of the phrase "contrary to the law." This language suggests that when only questions of law are involved in determining the validity of a policy, as when the policy facially violates the IDEA, exhaustion may not be required. In such cases, agency expertise and an administrative record are theoretically unnecessary in resolving the issue at hand. *See Lester H. by Octavia P. v. Gilhool*, 916 F.2d 865, 869 (3d Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 1317, 113 L.Ed.2d 250 (1991). Our preliminary inquiry, then, is whether only questions of law are presented in determining the validity of Tucson Unified's extended year policies. These policies fall into three principal categories: eligibility criteria and methodology, the extent of extended year programming provided, and procedural irregularities in parental notification.

### 1. *Eligibility Criteria and Methodology*

At the heart of plaintiffs' complaint is their challenge to the eligibility criteria and methodology employed by Tucson Unified to determine which disabled students receive extended year programming. They fault these criteria as requiring an excessive amount of regression over the summer months and an excessive recoupment period, setting uniform numerical standards for eligibility, requiring empirical evidence of regression, and failing to take into account the effect of past extended year programming on regression. Such eligibility policies, they contend, violate the IDEA because they preclude individualized determinations and operate to deny extended year services to students who need them.

Eligibility criteria and methodology are classic examples of the kind of technical questions of educational policy best resolved with the benefit of agency expertise and a fully developed administrative record. *Cf. Hendrick Hudson Cent. School Dist. Bd. of Educ. v. Rowley*, 458 U.S. 176, 208, 102 S.Ct. 3034, 3051, 73 L.Ed.2d 690 (1982) (cautioning that courts lack expertise necessary to resolve "persistent and difficult questions of education-

al policy," quoting *San Antonio Indep. School Dist. v. Rodriguez*, 411 U.S. 1, 42, 93 S.Ct. 1278, 1301, 36 L.Ed.2d 16 (1973)). Far from presenting purely legal issues, adjudicating the validity of these policies requires a fact-specific inquiry into their operation in an individual case. In *Riley v. Ambach*, 668 F.2d 635 (2d Cir.1981), for example, the court refused to waive exhaustion in a challenge to a state standard under which the eligibility of learning disabled students was determined. The validity of eligibility criteria under the IDEA, the court noted, raises "difficult and technical" questions, "upon which the state experts should first have their say. If that say does not resolve the issue, the record created by the application of their expertise to those problems will certainly help the federal court resolve the issue in a more informed manner." *Id.* at 640.

It is not surprising, therefore, that judicial review of eligibility criteria in an administrative vacuum is virtually unheard of. A number of federal courts have been called upon to review eligibility criteria for extended year programming similar to the criteria challenged in this case. All of these cases, however, represent judicial challenges to individualized education programs brought after full exhaustion of the IDEA's administrative process. *See Johnson*, 921 F.2d 1022; *Cordrey v. Euckert*, 917 F.2d 1460 (6th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 1391, 113 L.Ed.2d 447 (1991); *Alamo Heights Indep. School Dist. v. State Bd. of Educ.*, 790 F.2d 1153 (5th Cir.1986); *Rettig v. Kent City School Dist.*, 539 F.Supp. 768 (N.D.Ohio 1981), *vacated in part on other grounds*, 720 F.2d 463 (6th Cir.1983), *appeal dismissed and cert. denied*, 467 U.S. 1201, 104 S.Ct. 2379, 81 L.Ed.2d 339 (1984). A dispute over such eligibility criteria poli-

cies concerns, in essence, questions about the identification and evaluation of individual disabled children, precisely the kind of dispute to which the IDEA's administrative scheme is addressed. *See* 20 U.S.C. § 1415(b)(1)(E). Exhaustion as to these policies is therefore required.

### 2. *Extent of Extended Year Programming*

Plaintiffs' challenge to policies concerning the extent of extended year programming Tucson Unified offers to eligible students is two-fold. They first fault Tucson Unified's extended year program for being limited to a narrow category of "essential skills." Whether such a limitation on educational content violates the IDEA is not a purely legal question. Like the validity of Tucson Unified's eligibility policies, it presents a technical question of educational policy and methodology, and must await preliminary administrative review before being addressed by the federal courts.

Second, plaintiffs point to an informal policy pursuant to which Tucson Unified provides a uniform amount of extended year programming to eligible children regardless of individual need. This allegation, which we accept as true for purposes of our review,[6] arguably states a facial violation of the IDEA's individualization requirements. *See, e.g., Crawford v. Pittman*, 708 F.2d 1028, 1034 (5th Cir.1983) (categorical limitations on possible duration of special education programs are inconsistent with individualization requirement); *Battle v. Pennsylvania*, 629 F.2d 269, 281 (3d Cir.1980) (invalidating state's blanket rule limiting instruction to 180 days per year). As such, plaintiffs' challenge to this policy presents a purely legal question.

---

**6.** Whether the factual allegations of plaintiffs' complaint support this assertion is debatable. In one child's case, Tucson Unified provided "three to four" weeks of programming. In another, it provided four weeks of programming one year and "four to five weeks" another year. This vague pleading allows several possible readings: (1) both children were offered the same amount of extended school year programming (four weeks), or (2) the children were offered different amounts of extended year pro-

gramming (three weeks for one child, and four weeks one year and five weeks another year for the other child). Moreover, we are highly skeptical that these allegations concerning the experiences of two children are sufficient to plead the existence of an informal policy. Because this case is before us as a judgment on the pleadings, however, we view the facts alleged in the complaint in the light most favorable to the plaintiffs.

### 3. Parental Notification

The final category of challenged policies involves procedural irregularities in the written notification Tucson Unified provides parents. The plaintiffs allege that this notice does not give adequate information concerning parents' procedural rights and fails to state the reasons for denial of extended year programming. This informal notification policy, if proven, violates 20 U.S.C. § 1415(b)(1)(D), which requires notice of procedural rights available to parents, and 34 C.F.R. § 300.505, which requires that parental notice contain a full explanation of procedural safeguards and the basis for the proposed action or refusal to act. Plaintiffs' challenge to Tucson Unified's parental notification policy, then, also involves a purely legal question.

### C

Although two of Tucson Unified's alleged policies are on their face "contrary to the law"—providing a uniform amount of extended year programming to eligible students and providing inadequate notice to parents regarding extended year decisions—our inquiry with respect to the need to exhaust is not at an end. Determining whether these two policies violate the IDEA does not require technical educational expertise or the benefit of an administrative record, yet we must also weigh the importance of the final interest served by the exhaustion doctrine: affording the agency an opportunity to consider and correct errors. *McKart*, 395 U.S. at 195, 89 S.Ct. at 1663. This interest is substantial here.

Plaintiffs' challenge is to local school district policies, not state policies. States have ultimate responsibility for ensuring that local educational programs comply with the IDEA. 20 U.S.C. § 1414(b). In evaluating local compliance, states are directed to "consider any decision made pursuant to a [due process] hearing held under section 1415 ... which is adverse to the local education agency." 20 U.S.C. § 1414(b)(3). The IDEA's administrative review scheme thus represents an important resource to aid states in fulfilling their oversight responsibilities. Circumventing this scheme where local policies are challenged undermines the IDEA's enforcement structure.

Thus, even where local school policies appear on their face to violate the IDEA, administrative exhaustion may be necessary to give the state a reasonable opportunity to investigate and correct such policies.[7] *See Doe v. Maher*, 793 F.2d 1470, 1492 (9th Cir.1986) (parents must give state officials "adequate notice of the local agency's noncompliance, and the state must be afforded a reasonable opportunity to compel local compliance"), *modified on other grounds sub nom. Honig v. Doe*, 484 U.S. 305, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988). Challenging an individualized education program by recourse to the IDEA's procedural scheme affords the state such an opportunity. Although hearing officers lack power to adjudicate questions of statutory compliance, they are empowered to order the provision of an appropriate education program for an individual child, as guaranteed by the IDEA. *Cf. Robinson v. Pinderhughes*, 810 F.2d 1270, 1271, 1274–75 (4th Cir.1987) (school district's failure to implement hearing officer decision ordering private placement where services not available in district is actionable under 42 U.S.C. § 1983 as deprivation of right secured by federal law).

The IDEA's individual appeal process, however, is not the exclusive administrative mechanism for challenging local school district policies which violate the IDEA as

---

**7.** We are confronted in this case with local, rather than state policies. Where a state policy is challenged, allowing the state an opportunity to correct its own errors by requiring exhaustion may not be as weighty a consideration. *See, e.g., Tirozzi*, 832 F.2d at 756–57 (excusing exhaustion in a challenge to the adequacy of state complaint resolution procedure); *Parks v. Pavkovic*, 536 F.Supp. 296, 302–03 (N.D.Ill.1982)

(excusing exhaustion in challenge to statewide policies because state education agency had already predetermined result). *But see Riley v. Ambach*, 668 F.2d at 642 (requiring exhaustion in a challenge to a state administrative policy precluding residential placements for learning disabled children, because the state might reverse its policy in a compelling individual case).

a matter of law. Under the state's ED-GAR complaint procedure, parents may bring complaints to the state education agency of local school district violations of federal law. *See* 34 C.F.R. § 76.780; Ariz.Admin.Code § R7–2–804. Although the EDGAR complaint procedure is not a substitute for the administrative process prescribed by the IDEA, it serves a complementary function. *See Waterman v. Marquette–Alger Intermed. School Dist.*, 739 F.Supp. 361, 367–68 (W.D.Mich.1990); *Laughlin v. School Dist. No. 1*, 69 Or.App. 63, 686 P.2d 385, 388–89, *adhered to on reh'g*, 70 Or.App. 219, 689 P.2d 334 (1984), *rev. denied*, 298 Or. 597, 695 P.2d 50 (1985). The EDGAR complaint procedure may furnish an appropriate administrative remedy where the only purposes served by exhaustion are to notify the state of local noncompliance and to afford it an opportunity to correct the problem. Whether to require or to accept exhaustion of the EDGAR procedure as a substitute for exhausting IDEA procedures in challenges to facially invalid policies, however, is a determination which must be made on a case-by-case basis.

Here, the plaintiffs failed to fully avail themselves of either administrative remedy. None of the plaintiffs utilized the IDEA appeal process, and although they filed an EDGAR complaint with the Arizona Department of Education, they sought judicial relief before the state had completed its investigation. We do not condone the state's failure to respond within the 60–day time limit prescribed by ED-GAR and Ariz.Admin.Code § R7–2–804. We note, however, that the state requested an extension of time and indicated that a written report would be forthcoming.[8] Under these circumstances, we do not believe

that the potential benefits to be gained from pursuing the administrative process should have been foreclosed because of the state's failure to comply strictly with administrative time limits.[9]

In summary, we conclude that an exception to the IDEA's exhaustion requirement for challenges to "policies or practices of generalized applicability contrary to the law" does not lie in this case. First, before a court may determine whether Tucson Unified's policies concerning extended year criteria, methodology, and content violate the IDEA, it must have the benefit of agency expertise and an administrative record. Second, before a court addresses the validity of Tucson Unified's informal policies under which it allegedly prescribes uniform amounts of extended year programming and provides inadequate parental notification, the Arizona Department of Education must be given an adequate opportunity to investigate and correct these policies. The plaintiffs' failure to avail themselves of the IDEA's administrative remedies and their abandonment of their EDGAR complaint prematurely burdened the district court with a dispute which first should have been addressed in an administrative forum.

## IV. *Inadequacy*

The plaintiffs also contend that they need not exhaust the IDEA's administrative remedies because those remedies are inadequate. They note that the relief they seek, which is class-wide and injunctive in nature, is unavailable in the administrative forum. Again, the mere fact the complaint is structured as a class action seeking injunctive relief, without more, does not excuse exhaustion. To hold otherwise would render the IDEA's exhaustion requirement meaningless because it could be bypassed

---

8. Moreover, during the pendency of this case in the district court, the Arizona Department of Education did respond to the plaintiffs' EDGAR complaint. Joint Report at 5. The Department found that Tucson Unified was "out of compliance in the form of written notice previously given to parents." *Id.* at 6. In response, Tucson Unified apparently corrected its notification practices to comply with the IDEA. *Id.* These facts, although not properly before us in reviewing a dismissal on the pleadings, do lend support for our conclusion that the most appropri-

ate, and most effective, preliminary recourse in cases of local noncompliance is to the responsible state agency.

9. A persistent failure to respond to complaints within prescribed time limits, however, may constitute grounds for excusing exhaustion. *See, e.g., Frutiger v. Hamilton Cent. School Dist.*, 928 F.2d 68, 74 (2d Cir.1991). That is not the case presented to us here.

merely by styling the challenge a class action for injunctive relief.

Administrative remedies are generally inadequate where structural, systemic reforms are sought. *See J.G. v. Board of Educ.*, 830 F.2d at 446–47; *New Mexico Ass'n for Retarded Citizens*, 678 F.2d at 851; *Jose P. v. Ambach*, 669 F.2d 865, 869–70 (2d Cir.1982); *Gebhardt v. Ambach*, 1982–83 Educ.Handicapped L.Rep. (CRR) 554:341, :344 (W.D.N.Y.1982). Plaintiffs' claims, which involve only Tucson Unified's extended year program, do not rise to systemic proportions. Moreover, the equitable relief they seek is not structural in nature, but rather targets predominantly substantive aspects of a single component of Tucson Unified's special education program. *Cf. Gebhardt v. Ambach*, 1982–83 Educ.Handicapped L.Rep. at 554:344 (excusing exhaustion where issue is "how the school operates as a whole").

Exhaustion may also be excused because of inadequacy of administrative remedies where the plaintiffs' substantive claims themselves concern the adequacy of the administrative process. *See, e.g., Jose P. v. Ambach*, 669 F.2d at 867, 869. In contrast, the claims here focus on the content and administration of Tucson Unified's extended school year program. Although the inadequacy of Tucson Unified's parental notification procedure is one issue in this case, the plaintiffs have not suggested that these procedural irregularities deprived them of access to the administrative process, or that the appeal procedure provided by Tucson Unified and the state falls short of statutory standards.

Nor does the class action nature of the plaintiffs' suit entitle them to bypass the IDEA's administrative procedures. Administrative remedies are not inadequate simply because a large class of plaintiffs is involved. *See, e.g., Association for Retarded Citizens v. Teague*, 830 F.2d 158 (11th Cir.1987) (6,000 class members); *M.R. v. Milwaukee Pub. Schools*, 584 F.Supp. 767, 778 (E.D.Wis.1984) (200 class members). The legislative history does suggest that the IDEA's exhaustion requirement applies differently to class actions than to suits brought by individuals, inasmuch as *each* class member need not exhaust before a suit is brought. 121 Cong.Rec. 37,416 (1975) (remarks of Sen. Harrison Williams). We do not read this legislative history to suggest that exhaustion is excused for *every* class member, however. Here, none of the named plaintiffs has initiated, much less exhausted, administrative review of the individualized education program Tucson Unified has provided. Until representative plaintiffs have sought and been denied administrative relief, in the absence of a further ground for excusing exhaustion, they have not met an important prerequisite for class-wide judicial intervention.

Finally, the mere unavailability of injunctive relief does not render the IDEA's administrative process inadequate. Rather, the relevant inquiry is whether the administrative process is adequately equipped to address and resolve the issues presented. *See Kerr Ctr. Parents*, 897 F.2d at 1470 (excusing exhaustion where issue presented was legislature's failure to appropriate sufficient funds, which administrative process could not effectively address). The issues in this case consist primarily of questions of substantive educational policy, issues which the administrative process was specifically designed to address. Moreover, even though injunctive relief is unavailable, the administrative process has the potential for producing the very result plaintiffs seek, namely, statutory compliance. As we noted above, Arizona must consider any administrative decisions in individual due process appeals adverse to Tucson Unified in fulfilling its oversight responsibilities. 20 U.S.C. § 1414(b)(3). Because the named plaintiffs' cases are representative of the policies at issue in this case, individual administrative determinations would alert the state to local compliance problems and further correction of any problems on a state-local level. *See Teague*, 830 F.2d at 161–62 (even though claims are of a "sweeping nature," resolving "a few representative claims" at the administrative level would highlight compliance problems and allow state to take remedial action). Similarly, compelling local compliance with the IDEA is relief poten-

tially available from the state through the EDGAR complaint procedure.

## CONCLUSION

Had the four named plaintiffs first sought administrative relief and been denied that relief, this case would be before us in an entirely different posture. Until such remedies are exhausted, judicial involvement in this dispute over Tucson Unified's extended school year program is unwarranted. In particular, issues of program content, eligibility criteria, and methodology can only be resolved in the context of a specific case brought to the court after application of agency expertise and the development of an administrative record. In the absence of such an administrative record, the court is ill-equipped to ascertain whether Tucson Unified's policies operate to deny individual disabled students the education guaranteed them by the IDEA. Moreover, pursuit of the administrative process affords the plaintiffs not only a means of obtaining the administrative reform sought in their prayer for relief, but also an opportunity to secure the individual redress which motivates their claims.

The judgment of the district court is AFFIRMED.