J.S., hereinafter "John", by his parent and natural guardian; N.S., individually and on behalf of all others similarly situated; S.H., hereinafter "Sally" by her parent and natural guardian; C.H., Charles hereinafter by their parent and natural guardian; J.H., individually and on behalf of all others similarly situated; C.Z.,

hereinafter "Caroline" by their parent and natural guardian; K.Z., "Ken" hereinafter by their parent and natural guardian individually and on behalf of all situated; (Hereinafter "Dennis"), by His Parent and Natural Guardian, S.E., on Behalf of all Others Similarly Situated, Plaintiffs—Appellees,

v.

**ATTICA CENTRAL SCHOOLS,**
Defendant—Appellant.

Docket No. 03–7170.

United States Court of Appeals,
Second Circuit.

Argued: Dec. 3, 2003.

Decided: Oct. 6, 2004.

Daniel J. Moore, Law Firm of Harris Beach LLP, Pittsford, NY, for Defendant–Appellant.

Bruce A. Goldstein, Law Firm of Bouvier, O'Connor, LLP (Arthur H. Ackerhalt, of counsel), Buffalo, NY, for Plaintiffs–Appellees.

Ronald M. Hager, Neighborhood Legal Services, Buffalo, NY; Jonathan Feldman, Public Interest Law Office Of Rochester, Rochester, NY, for Amicus Curiae National Association of Protection and Advocacy Systems and Western New York Disability Law Coalition.

Jay Worona, New York State School Boards Association, Inc., Latham, NY, for Amicus Curiae New York State School Boards Association, Inc.

Before: CARDAMONE, SACK, and JOHN R. GIBSON,* Circuit Judges.

JOHN R. GIBSON, Circuit Judge.

Six students who attend school in the Attica Central School District brought an action against the School District primarily alleging that they have been denied the provision of a free appropriate public education. They included claims under the Individuals with Disabilities Education Act (IDEA), Section 504 of the Rehabilitation Act of 1973, Section 1983, and related New York state education laws. The students sought equitable relief, costs and attorney's fees.[1] The School District filed a motion to dismiss the complaint for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. The district court (William M. Skretny, *Judge*) denied the motion in its entirety but, upon the School District's request, certified the issue of subject matter jurisdiction for interlocutory appeal. On February 26, 2003, we agreed to hear it.

The School District argues on appeal that the students should have been required to exhaust their administrative remedies before bringing a federal court action. In its order denying the motion to dismiss, the district court concluded that the complaint alleged facts sufficient to establish subject matter jurisdiction. The district court reasoned that the School District's alleged systemic violations of the IDEA cannot be remedied through administrative proceedings, and therefore exhaustion would be futile. The complaint was styled as a class action, and the district court described it as containing "complain[ts] of wrongdoing that is inherent in the program itself and not directed at any individual child." The district court did not rule on the students' motion to certify the class, however, and they later withdrew that motion without prejudice pending this appeal.

■■■ On appeal of the district court's order on the motion to dismiss, we must accept as true all material factual allegations in the complaint, but we are not to draw inferences from the complaint favorable to plaintiffs. *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir.1998). We may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, but we may not rely on conclusory or hearsay statements contained in the affidavits. *Zappia Middle E. Const. Co. Ltd. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000); *Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir.1986). The district court declined to consider any of the materials outside of the pleadings that either party submitted. Accordingly, we limit our review to the allegations in the complaint.

## THE COMPLAINT

The complaint describes each plaintiff's alleged special education deprivations. Plaintiff J.S., or John, attends Attica Middle School in a class with twelve students, one special education teacher, and one aide. Attica Middle School is the only middle school in the School District. According to the School District's Committee on Special Education, John is multiply disabled. He has cerebral palsy, is mentally retarded, and has perceptual/visual motor deficits. These conditions make him phys-

---

* The Honorable John R. Gibson of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

1. In their complaint, plaintiffs also asked for money damages, but they later struck that portion of their prayer.

ically handicapped, mobility-impaired, and dependent upon a wheelchair.

John is able to get in and out of the middle school only through the shop class, and he does not have adequate access to the school's computer room, nurse's office, weight room, home economics room, or swimming pool. He also does not have adequate or safe toilet access.

The School District has not provided John with an appropriate and adequate Individualized Education Program. The document lacks satisfactory goals and objectives, adaptive physical education, mobility training, and means to deal with John's visual/perception deficits. The School District does not provide John with appropriate transition services or sufficient progress reports, and it has failed to evaluate him and provide assistive technology services. John has not been provided an education in the least restrictive environment.

S.H., or Sally, attends Prospect Elementary School in a class with twelve students, one special education teacher, and one aide. She is also classified as multiply disabled. She has cerebral palsy with seizure disorder, is mentally retarded, visually impaired, speech impaired, and is largely non-verbal. She is physically handicapped, mobility-impaired, and dependent upon a wheelchair. She uses "Total Communication" sign language and is assisted with equipment called a Dynavox.

Sally enters the elementary school through a ramped door that someone else has to open for her. She is able to reach only the first floor of the three-story school. She cannot go to the basement where the cafeteria is located, so she and her classmates eat lunch in their classroom. She has no access to the music room, the computer lab, or the school playground. Sally does not receive sufficient physical and occupational therapy, and her education is not in the least restrictive environment.

C.H., or Charles, attends Attica Senior High School in regular education classrooms. He is classified as learning disabled, and he receives resource room services and poorly implemented testing modifications. The School District has not developed an adequate transition plan for Charles or provided him with special education services that would allow him to benefit from his educational program. School staff have not been informed of or trained in implementing Charles's Individualized Education Program.

C.Z., or Caroline, attends Prospect Elementary School in a pre-first grade program for at-risk students. Although she receives special services from the School District, she is not classified under the IDEA. Caroline was tested and denied special education because her scores were too high, but her parent was not given a copy of the test results. Caroline has been denied services she should receive as a learning disabled child.

K.Z., or Ken, attends Sheldon Elementary School as a fifth grade student in a regular education classroom. The School District's Committee on Special Education declassified him from his classification as speech impaired.

D.E., or Dennis, is enrolled at Attica Senior High School. He has a medical condition which defines him as a person with a disability under Section 504 of the Rehabilitation Act. Following his request, a hearing was held which resolved his complaints with respect to his condition.

In addition to describing the circumstances of each individual plaintiff, the complaint alleges twenty-seven separate ways in which the School District has failed to comply with its obligations to

students who are or may be disabled, and to those students' parents. These allegations include failures to evaluate, to prepare or implement Individual Education Programs, to provide notice to parents, and to provide appropriate training.

## I.

■ The Attica Central School District argues that the district court erred in failing to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(1). The district court determined that dismissal was unwarranted because the complaint falls within the "systemic violation" exemption from the exhaustion requirement. In a motion to dismiss for lack of jurisdiction, we review *de novo* the district court's legal conclusions. *APWU v. Potter*, 343 F.3d 619, 623–24 (2d Cir.2003).

■ It is well settled that the IDEA requires an aggrieved party to exhaust all administrative remedies before bringing a civil action in federal or state court,[2] and the parties do not dispute the requirement. The process includes review by an impartial due process hearing officer and an appeal from that hearing. 20 U.S.C. § 1415(f) and (g). Parents may request a hearing to present complaints relating to the "identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education." 20 U.S.C. § 1415(b)(6). In New York, upon notice of request to the school district, the local board of education appoints an impartial hearing officer under a rotational selection process. The hearing officer issues a written decision which can be appealed to a state review officer of the New York Education Department. The state review officer's decision is final. 8 N.Y.C.R.R. § 200.5(i),(j).

■ The exhaustion requirement also applies where plaintiffs seek relief under other federal statutes when relief is also available under the IDEA. 20 U.S.C. § 1415(*l*); *Hope v. Cortines*, 872 F.Supp. 14, 19 (E.D.N.Y.), *aff'd*, 69 F.3d 687 (2d Cir.1995). As the district court correctly noted, the students asserted a section 504 Rehabilitation Act claim and a section 1983 claim that both seek to ensure a free appropriate public education, thus subjecting both to the IDEA exhaustion requirement.

■ The requirement is excused, however, when exhaustion would be futile because the administrative procedures do not provide an adequate remedy. *E.g.*, *Taylor v. Vermont Dep't of Educ.*, 313 F.3d 768, 788–91 (2d Cir.2002). The students bear the burden of proof that exhaustion would be futile. *Polera v. Bd. of Educ. of the Newburgh Enlarged City Sch. Dist.*, 288 F.3d 478, 488 n. 8 (2d Cir.2002) (party asserting futility bears burden of proof).

■ Exhaustion of administrative remedies is required under the IDEA so that disputes related to the education of disabled children are first analyzed by administrators with expertise in the area who can promptly resolve grievances. *Polera*, 288 F.3d at 487.

> Exhaustion of the administrative process allows for the exercise of discretion and educational expertise by state and local agencies, affords full exploration of technical educational issues, furthers development of a complete factual record, and promotes judicial efficiency by giving these agencies the first opportunity to correct shortcomings in their educational programs for disabled children.

*Id.* (quoting *Hoeft v. Tucson Unified Sch. Dist.*, 967 F.2d 1298, 1303 (9th Cir.1992)). If the administrative process is not suc-

---

**2.** 20 U.S.C. § 1415(i)(2) (2000); *Heldman v. Sobol*, 962 F.2d 148, 158 (2d Cir.1992).

cessful at resolving the dispute, it will at least have produced a helpful record because administrators versed in the relevant issues were able to probe and illuminate those issues for the federal court. *Riley v. Ambach,* 668 F.2d 635, 640 (2d Cir.1981). As we analyze whether plaintiffs have proven that their case should not be subject to the exhaustion requirement, we are to consider whether administrative review would further the goals of developing facts, making use of available expertise, and promoting efficiency. *Hoeft,* 967 F.2d at 1303.

■ In response to the motion to dismiss, the students asserted that they were excused from exhaustion because of a "class action exception." The district court concluded that case law did not support the students' assertion and that, even if the exception did exist, the students would not be entitled to it because no class had been certified. However, the district court observed that the futility exception has been applied in cases of alleged systemic violations, and that such cases are often class actions. The court concluded that, because the complaint is aimed at "wrongdoing that is inherent in the program itself and not directed at any individual child," the allegations of systemic violations entitled them to exemption from the exhaustion requirement.

The district court correctly observed that this Court has previously excused exhaustion of administrative remedies in cases that included allegations of systemic violations. *Heldman v. Sobol,* 962 F.2d 148 (2d Cir.1992); *Mrs. W. v. Tirozzi,* 832 F.2d 748 (2d Cir.1987); *J.G. v. Bd. of Educ. of the Rochester City Sch. Dist.,* 830 F.2d 444 (2d Cir.1987); *Jose P. v. Ambach,* 669 F.2d 865 (2d Cir.1982). In each of these cases, this Court concluded it would be futile to complete the administrative review process because the hearing officer had no power to correct the violation. In *Heldman,* a father of a student with learning disabilities brought suit challenging the manner in which hearing officers are selected in New York because he thought the system had denied his son an impartial review of his Individualized Education Program. 962 F.2d at 151. This Court concluded that exhaustion was futile because the plaintiff was challenging a regulation implementing a state statute that neither the hearing officer nor the Commissioner of Education had the authority to alter. *Id.* at 159.

*Tirozzi* involved complaints filed with the Connecticut State Board of Education on behalf of groups of handicapped children who were not receiving adequate services. The plaintiffs believed the state's treatment of their complaints to be inadequate, and they filed suit in federal court seeking an injunction requiring the agency to formulate and implement adequate complaint resolution procedures. 832 F.2d at 752–53. This Court concluded that the alleged systemic violations could not be remedied by hearing officers and were of a kind for which an administrative record would not be of value to the district court. The alleged deficiencies were in the existing administrative scheme, and this Court held that exhaustion was therefore futile. *Id.* at 756–57.

A class action brought by a class of handicapped students against a local school district was settled, and the district appealed the district court's award of attorney's fees in *J.G.* The district argued that the class was statutorily precluded from recovering its fees because it had not exhausted its administrative remedies. 830 F.2d at 446. This Court concluded that the allegations were of wrongdoing inherent in the program, which included failure to evaluate and place students, failure to develop individualized education

programs, and failure to inform parents of their rights. *Id.* at 446–47. Moreover, the settlement "went far beyond and accomplished much more than what could have been accomplished through administrative hearings." *Id.* at 447.

In *Jose P.*, another class action, plaintiffs sought structural reform of the New York state and city educational systems to allow more timely evaluation and placement of handicapped children in appropriate programs. 669 F.2d at 867. The city's commissioner of education conceded that he could not foresee expeditious handling of the thousands of appeals at issue, and the state's bureaucratic system was not likely to lead to resolution. Accordingly, this Court held that resorting to administrative remedies would be futile. *Id.* at 869.

The common element among these four cases is that the plaintiffs' problems could not have been remedied by administrative bodies because the framework and procedures for assessing and placing students in appropriate educational programs were at issue, or because the nature and volume of complaints were incapable of correction by the administrative hearing process. If each plaintiff had been forced to take his or her claim before a hearing officer and appeal to another local or state official, there would have been a high probability of inconsistent results. Moreover, the plaintiffs' claims were such that an administrative record would not have been of substantial benefit to the district court.

The School District argues that these cases are distinguishable and that instead we should be guided by the reasoning of *Hope v. Cortines,* 872 F.Supp. 14 (E.D.N.Y.), *aff'd,* 69 F.3d 687 (2d Cir.1995). In *Hope,* parents of a child with a learning disability requested a hearing because they were dissatisfied with the Individualized Education Program that had been developed for her. The hearing was started but adjourned. Before its resumption, the parents filed suit in federal court alleging violations of the Americans with Disabilities Act, civil rights laws, and the New York Human Rights Law. They did not bring a claim under the IDEA. The district court conducted a hearing on the parents' preliminary injunction motion and dismissed the complaint for lack of subject matter jurisdiction. 872 F.Supp. at 16.

The district court in *Hope* concluded that all of plaintiffs' claims were subject to the IDEA's exhaustion requirement because each claim sought relief that is available under the IDEA. *See* 20 U.S.C. § 1415(f) (before filing suit seeking relief under any federal statute protecting the rights of children and youth with disability, if the relief sought is also available under the IDEA, plaintiff must exhaust administrative remedies). The district court examined the exceptions to the exhaustion requirement *sua sponte,* and it found that none applied. 872 F.Supp. at 22–23. This Court affirmed the district court's "thorough, thoughtful opinion." 69 F.3d 687, 688 (2d Cir.1995).

The district court in *Hope* also considered the purposes of exhaustion.

> Plaintiffs in substance challenge the adequacy of the IEP created for [the student] and seek imposition of their own more expansive IEP. This is precisely the type of remedy best fashioned by the educational experts skilled in developing such programs and provides a textbook example of the types of cases justifying administrative exhaustion.

872 F.Supp. at 21. We acknowledge *Hope*'s recognition of the importance of exhaustion in "textbook" cases presenting issues involving individual children where the remedy is best left to educational experts operating within the framework of the local and state review procedures.

However, the complaint in this case does not allow us to conclude that this is such a "textbook" case—at least not at this stage of the proceedings. The district court made clear that the complaint does not challenge the content of Individualized Education Programs, but rather the School District's total failure to prepare and implement Individualized Education Programs. The district court also enumerated three more examples in the complaint of allegations of systemic problems: the School District's alleged failure to notify parents of meetings as required by law; its alleged failure to provide parents with legally required progress reports; and its alleged failure to provide appropriate training to school staff. Further, the complaint contains additional allegations of systemic problems, including failure to perform timely evaluations and reevaluations of disabled children; failure to provide parents with required procedural safeguards regarding identification, evaluation, and accommodation of otherwise disabled children; and failure to perform legally required responsibilities in a timely manner, including providing and implementing transition plans, transitional support services, assistive technology services, and declassification services for children with disabilities.

As we consider the order denying the School District's motion to dismiss, we are mindful that we "must assume the truth of all facts pleaded by the party opposing the motion and read the record in a light most favorable to that party." *Tirozzi*, 832 F.2d at 757. We are persuaded that the district court correctly applied the law with respect to exhaustion to the allegations of the complaint, and we affirm the district court's denial of the Rule 12(b)(1) motion to dismiss the IDEA claim.

## II.

The district court certified only the subject matter jurisdiction issue for interlocutory appeal and denied the School District's motion insofar as it sought certification of the district court's ruling on the sufficiency of plaintiffs' Section 504 and Section 1983 claims. We are not necessarily limited to the certified issue, as we have the discretion to consider any aspect of the order from which the appeal is taken. *Morse/Diesel, Inc. v. Trinity Indus., Inc.*, 859 F.2d 242, 249 & n. 6 (2d Cir.1988); *Moore v. Liberty Nat'l Life Ins. Co.*, 267 F.3d 1209, 1219–20 (11th Cir.2001) ("[T]he district court's order, not the certified question, is brought before the court on a § 1292(b) appeal, and this court's jurisdiction is not confined to the precise question certified by the district court.").

Plaintiffs' complaint includes four counts in addition to the IDEA count. All five counts, however, are based on the same set of factual allegations. Plaintiffs allege that the School District's failures concomitantly constitute violations of their rights to a free appropriate public education under the IDEA, Section 504 of the Rehabilitation Act, and provisions of the New York Education Law;[3] deprivation of physical access to school facilities under Section 504; and violations of due process and/or equal protection rights that are actionable under Section 1983. Because the claims are so closely related, the most efficient resolution is for us to exercise our discretion in favor of considering all of them.

The School District argues that the Section 504 claims and the Section 1983 claim

---

**3.** The School District does not argue that the state law claim is subject to dismissal under Rule 12(b)(6) for failure to state a claim.

**116**

should be dismissed for failure to exhaust. In the alternative, the School District argues that they should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim. We first consider whether the IDEA's exhaustion requirement also applies to these other counts. The relevant portion of the statute gives some guidance:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act . . ., title V of the Rehabilitation Act . . ., or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) of this section shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

20 U.S.C. § 1415(1). Thus, if plaintiffs' other claims seek relief that is also available under the IDEA, they too are subject to exhaustion analysis.

Plaintiffs acknowledge that our ruling on their IDEA claim will apply to their second Section 504 claim, which seeks relief for failure to provide a free appropriate public education. Because their Section 1983 claim likewise seeks relief based on the same alleged failure, it too will be governed by the same ruling. Accordingly, we affirm the district court's denial of the School District's Rule 12(b)(1) motion to dismiss the complaint's second Section 504 claim and its Section 1983 claim.

The district court applied the correct standard in its consideration of the School District's Rule 12(b)(6) motion to dismiss the Section 504 counts and the Section 1983 count. On appeal, we too must assume the truth of the allegations of the complaint, read the record in the light most favorable to plaintiffs, and draw all inferences in their favor. *Mrs. W. v. Tirozzi,* 832 F.2d 748, 757 (2d Cir.1987). We have reviewed the district court's Rule 12(b)(6) ruling and, finding no error, we affirm.

### CONCLUSION

The district court correctly ruled that the students' complaint is not subject to dismissal under Rules 12(b)(1) or (6). We affirm the judgment and remand for further proceedings.