*J.M. v. New York City Dept. of Ed.*

# In the
# United States Court of Appeals
# For the Second Circuit

August Term, 2025

(Argued:  October 29, 2025      Decided:  December 9, 2025)

Docket No. 25-1046

J.M., ON BEHALF OF HERSELF AND AS NEXT FRIEND TO HER CHILDREN, J.M.1, T.M., AND D.M., E.W., ON BEHALF OF HERSELF AND AS NEXT FRIEND TO HER CHILD, Z.K., C.B., ON BEHALF OF HERSELF AND AS NEXT FRIEND TO HER CHILD, T.O.,

*Plaintiffs-Appellants*,

L.T., ON BEHALF OF HERSELF AND AS NEXT FRIEND TO HER CHILD, C.T., M.C., ON BEHALF OF HERSELF AND AS NEXT FRIEND TO HER CHILD, G.L., K.D., ON BEHALF OF HERSELF AND AS NEXT FRIEND TO HER CHILD, V.D.,

*Plaintiffs*,

–v.–

NEW YORK CITY DEPARTMENT OF EDUCATION, THE BOARD OF EDUCATION OF THE CITY SCHOOL DISTRICT OF THE CITY OF NEW YORK, CHANCELLOR MELISSA AVILES-RAMOS, IN HER OFFICIAL CAPACITY, CITY OF NEW YORK,

*Defendants-Appellees.*[*]

---

[*] The Clerk of Court is respectfully directed to amend the caption as reflected above, including, per F.R.A.P. 43(c)(2), replacing David Banks, in his official capacity as Chancellor, with Melissa Aviles-Ramos, in her official capacity as Chancellor.

Before: CABRANES, CHIN, and ROBINSON, *Circuit Judges*.

Under the Individuals with Disabilities Education Act ("IDEA"), an aggrieved party generally must exhaust administrative remedies before bringing a civil action in federal or state court. 20 U.S.C. § 1415(i)(2). At issue in this appeal is whether this case falls within an exception to the general rule.

Plaintiffs are parents of disabled children suing for declaratory, injunctive and other relief on behalf of themselves, their children, and a class of similarly situated children. They allege that the New York City Department of Education, the Board of Education of the City School District of The City of New York, and Chancellor Melissa Aviles-Ramos, in her official capacity, violated the IDEA by maintaining a policy of discontinuing services to students with disabilities before their twenty-second birthday. Plaintiffs appeal from a judgment of the United States District Court for the Southern District of New York (Garnett, *J.*) dismissing their claims for lack of subject-matter jurisdiction due to their failure to exhaust administrative remedies.

Because we conclude exhaustion would have been futile insofar as Plaintiffs challenge a blanket policy or practice of general applicability that is contrary to law, we VACATE and REMAND for further proceedings consistent with this opinion.

JASON H. KIM, Schneider Wallace Cottrell Kim LLP, Los Angeles, CA; Elisa F. Hyman, The Law Office of Elisa Hyman, P.C., New York, NY, *for Plaintiffs-Appellants*.

SUSAN PAULSON (Richard Dearing, Melanie T. West, *on the brief*), *for* Muriel Goode-Trufant, Corporation Council, New York, NY, *for Defendants-Appellees.*

ROBINSON, *Circuit Judge*:

Under the Individuals with Disabilities Education Act ("IDEA"), an aggrieved party generally must exhaust administrative remedies before bringing a civil action in federal or state court. 20 U.S.C. § 1415(i)(2). At issue in this appeal is whether this case falls within an exception to the general rule.

Plaintiffs are parents of disabled children suing for declaratory, injunctive and other relief on behalf of themselves, their children, and a class of similarly situated children. They allege that the New York City Department of Education, the Board of Education of the City School District of The City of New York, and Chancellor Melissa Aviles-Ramos, in her official capacity, (together, the "DOE") violated the IDEA by maintaining a policy of discontinuing services to students with disabilities before their twenty-second birthday. They seek declaratory, injunctive, and other relief. Plaintiffs appeal from a judgment of the United States District Court for the Southern District of New York (Garnett, *J.*) dismissing their claims for lack of subject-matter jurisdiction due to their failure to exhaust administrative remedies.

Because we conclude exhaustion would have been futile insofar as Plaintiffs challenge a blanket policy or practice of general applicability that is contrary to

3

law, we VACATE and REMAND for further proceedings consistent with this opinion.

## BACKGROUND

The IDEA provides for federal funding to help states educate children with disabilities. *J.S. v. New York State Department of Corrections and Community Supervision*, 76 F.4th 32, 35 (2d Cir. 2023) (*J.S. v. DOC*). To qualify for federal funding, each state must have policies and procedures to ensure that "all children with disabilities . . . between the ages of 3 and 21, inclusive," can access a "free appropriate public education" ("FAPE"). 20 U.S.C. § 1412(a)(1)(A).

In 2021, this Court held that a Connecticut statute providing that the obligation of local and regional boards of education to provide special education terminates when a child graduates from high school or "reaches age twenty-one," whichever comes first, violated the IDEA. *A.R. v. Connecticut State Board of Education*, 5 F.4th 155, 158 (2d Cir. 2021).[1] We reasoned that the IDEA requires recipient states to provide a free and appropriate public education until a student's twenty-second birthday. *Id.* at 157–58. We endorsed the district court's view that "public education" is defined as one that is provided at public expense, under the

---

[1] In quotations from caselaw and the parties' briefing, this opinion omits all internal quotation marks, footnotes, and citations, and accepts all alterations, unless otherwise noted.

supervision of state educational agencies, and "with the objective of educating students up to the level of academic proficiency associated with the completion of secondary school." *Id.* at 164, 166. And we adopted the district court's conclusion that several of Connecticut's state-administered, publicly funded adult education programs constituted "public education" under the IDEA. *Id.* at 166–67. Thus, Connecticut students' statutory right to a free and appropriate public education continued until their twenty-second birthday, at which time the IDEA no longer applies. *Id.* at 167.

In response to *A.R.*, in July 2023 the New York State Education Department ("State") issued a formal opinion concluding that *A.R.* applied throughout New York. The State reasoned that "New York, like Connecticut, offers publicly funded adult education programs to non-disabled students in this age group," so the IDEA requires districts to provide a FAPE until a student's twenty-second birthday. App'x 74.

The DOE did not immediately follow the guidance, and in November 2023 Plaintiffs filed this putative class action, seeking injunctive relief to provide a FAPE to Plaintiffs until they reach the age of twenty-two, compensatory education, and a declaratory judgment that the DOE is violating the IDEA, among other relief. Plaintiffs alleged that the DOE "failed to implement a citywide change

5

in policy, procedure and/or practice to ensure FAPE to children who are not yet twenty-two, but who have reached the end of the school year in which they turned twenty-one" and that the DOE's "application of blanket policies, practices [and] procedures violate the IDEA." App'x 29.

The DOE subsequently adopted a policy for the 2024-2025 school year (later extended to the 2025-2026 school year) extending access to a FAPE to students with disabilities until the end of the school year in which they turn 22. *See* NYC DOE, *Special Education Standard Operating Procedures Manual* 51 n.59, 122 n.164 (May 29, 2025) [https://perma.cc/37ND-5CUN].

The DOE explains that it adopted this temporary policy "to clarify its practices while state-court litigation challenging [the State's] determination played out." Appellee's Brief 6. The temporary policy does not affect any Plaintiffs in this action because they were already over 22 when the DOE issued the new policy guidance.

Meanwhile, New York courts are considering whether school districts throughout the state must provide a FAPE until students turn twenty-two. The New York Court of Appeals has not yet spoken on the matter, but the Appellate Division, Third Department, has answered this question in the affirmative. *See Mahopac Central School District v. New York State Education Department*, 240 N.Y.S.3d

534 (App. Div. 3d Dep't 2025); *Katonah-Lewisboro Union Free School District. v. New York State Education Department*, 239 N.Y.S.3d 336 (App. Div. 3d Dep't 2025). Motions for leave to appeal both decisions are pending before the Court of Appeals.

In this case, the DOE moved to dismiss the complaint, arguing that the district court could not hear the case because Plaintiffs had not exhausted their administrative remedies. Plaintiffs contended that exhaustion was not necessary because it would be futile under the circumstances. The court agreed with DOE and dismissed the suit for lack of subject-matter jurisdiction. Plaintiffs appeal.

## DISCUSSION

We first clarify that the IDEA's requirement to exhaust administrative remedies is a claim-processing rule and not a limit on the court's jurisdiction. Although this is a question that we have previously left open, *Ventura de Paulino v. New York City Department of Education*, 959 F.3d 519, 530 n.44 (2d Cir. 2020), a recent Supreme Court decision suggests the answer. In particular, the Court has explained that an "exhaustion requirement . . . is a quintessential claim-processing rule" and is "typically nonjurisdictional for good reason," because treating these requirements as jurisdictional "could undo the benefits of exhaustion" as a doctrine that promotes efficiency. *Santos-Zacaria v. Garland*, 598 U.S. 411, 417–18

7

(2023). To conclude that the exhaustion requirement is jurisdictional, we must have "unmistakable evidence, on par with express language addressing the court's jurisdiction." *Id.* at 418.

Because the IDEA contains no such language, we join our sister circuits that have addressed this issue in holding that the requirement here is not jurisdictional but is instead a claim-processing rule. *See, e.g., K.I. v. Durham Public Schools Board of Education*, 54 F.4th 779, 792 (4th Cir. 2022); *Payne v. Peninsula School District*, 653 F.3d 863, 867 (9th Cir. 2011), *overruled on other grounds by Albino v. Baca*, 747 F.3d 1162, 1171 (9th Cir. 2014); *Mosely v. Board of Education of the City of Chicago,* 434 F.3d 527, 532–33 (7th Cir. 2006); *N.B. by D.G. v. Alachua County School Board*, 84 F.3d 1376, 1379 (11th Cir. 1996), *abrogated on other grounds by Luna Perez v. Sturgis Public Schools*, 598 U.S. 142, 147–48 (2023).

We therefore review the District Court's dismissal under the standard for failure to state a claim upon which relief can be granted, without deference as to the district court's legal conclusions. *Muto v. CBS Corp.*, 668 F.3d 53, 56 (2d Cir. 2012). At the pleading stage, we accept all material factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiffs. *Id.*

To provide a free, appropriate public education for students with disabilities pursuant to the IDEA, school districts and parents follow specified processes to

evaluate each student, determine that student's eligibility and educational need, and create and maintain an "individualized education program" ("IEP") for each child. *See generally* 20 U.S.C. § 1414. Parents are to be advised of these rights, and their associated rights to challenge and appeal a district's evaluation or provision of supports. *Id.* § 1415(b)–(d).

The IDEA provides an extensive administrative review process. Parents are entitled to a "due process hearing" before an independent hearing officer to present complaints relating to the "identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education." *Id.* § 1415(b)(6), (f). Parents may then appeal an adverse decision to a state review officer. *Id.* § 1415(g).

In the normal course, parents may only sue in federal or state court under the IDEA after exhausting these administrative remedies. *Id.* § 1415(i)(2); *J.S. ex rel. N.S. v. Attica Central Schools*, 386 F.3d 107, 112 (2d Cir. 2004) (*J.S. v. Attica*). Exhaustion of the administrative process allows schools and districts to exercise discretion and apply their educational expertise, " 'affords full exploration of technical educational issues, furthers development of a complete factual record, and promotes judicial efficiency by giving these agencies the first opportunity to correct shortcomings in their educational programs for disabled children.' " *Id.*

(quoting *Polera v. Board of Education of Newburgh Enlarged City School District*, 288 F.3d 478, 487 (2d Cir. 2002), *abrogated on other grounds by Luna Perez*, 598 U.S. at 147–48).

However, exhaustion is not an absolute requirement. *See, e.g.*, *Mrs. W. v. Tirozzi*, 832 F.2d 748, 756–57 (2d Cir. 1987) (reversing dismissal of plaintiffs' claims for failure to exhaust and concluding that exhaustion was futile). "Exhaustion will be excused where it would be futile, the agency has adopted a policy or practice of general applicability that is contrary to law, or it is improbable that adequate relief is available in the administrative forum," or where "the parents have not been notified that such remedies were available to them." *Weixel v. Board of Education of City of New York*, 287 F.3d 138, 149 (2d Cir. 2002). We must also consider "whether administrative review would further the goals of developing facts, making use of available expertise, and promoting efficiency" in evaluating whether exhaustion is futile in any given case. *J.S. v. Attica*, 386 F.3d at 113.

Plaintiffs contend that their failure to exhaust in this case is excused for two reasons: (1) adequate relief would not be available in the administrative forum, and (2) they challenge a DOE policy or practice of general applicability that is contrary to law. *Weixel*, 287 F.3d at 149. We conclude that Plaintiffs' claims fall squarely within the latter exception. To explain our conclusion, we consider the

scope and limits of the "policy or practice" exception and then consider how it applies to Plaintiffs' claims.

## I. Policy-or-Practice Exception

We first recognized the "policy or practice" exception in *Tirozzi*. 832 F.2d at 756. In that case, we stated, "Exhaustion is not an inflexible rule. Under certain circumstances, not all [IDEA] administrative remedies must be exhausted prior to invoking a civil action . . . ." *Id.* We explained, "Congress specified the situations in which before filing suit, exhaustion of the due process and review procedures set forth in [the IDEA[2]] is not a prerequisite," including where "an agency has adopted a policy or pursued a practice of general applicability that is contrary to the law." *Id.* There, the plaintiffs sued without exhausting administrative remedies, alleging that the Connecticut State Board did not adequately respond to complaints about a local school board failing to conduct evaluations of handicapped children, and that the State Board neither communicated with the plaintiffs during the investigation nor provided them with an opportunity to respond. *Id.* at 752–53. Pointing to both the policy-or-practice exception and the unlikely-to-receive-adequate-relief exception to the exhaustion requirement, we

---

[2] At the time of *Tirozzi*, the administrative procedures generally subject to exhaustion appeared at 20 U.S.C. § 1415(b)(2) and (c), but now they appear at 20 U.S.C. § 1415(f) and (g).

concluded that "plaintiffs have pleaded an entitlement to an exemption from exhaustion of administrative remedies," without specifying which exception applied. *Id.* at 757.

We have since identified this exception in two decisions—one precedential and one non-precedential—but we have not determined its scope and limits, and we have not applied it since we introduced it in *Tirozzi*. *See Weixel*, 287 F.3d at 149; *Z.Q. by G.J. v. New York City Department of Education*, No. 22-939, 2023 WL 1486387, at *2 (2d Cir. Feb. 3, 2023) (summary order). We do so now, considering the legislative history that prompted our initial recognition of the exception in *Tirozzi*, reviewing decisions of sister circuits that have grappled with the policy-or-practice exception, and concluding with our own articulation of the scope and limits of the exception.

*A.    Legislative History*

In 1986, Congress amended the Education of the Handicapped Act ("EHA")—the prior name for what is now the IDEA—in an effort to override the effects of the Supreme Court's decision in *Smith v. Robinson*, 468 U.S. 992 (1984).[3] In that case, the Court considered claims under the EHA, § 504 of the

---

[3] Congress changed the name of the EHA to the IDEA in a 1991 reauthorization. Individuals with Disabilities Education Act, Pub. L. No. 102-119, § 25(b), 105 Stat. 587, 607 (1991).

Rehabilitation Act, and 42 U.S.C. § 1983 arising from a school district's refusal to continue funding the special education placement of a child who had cerebral palsy. *Smith*, 468 U.S. at 994–95. The central issue in the case was whether the prevailing plaintiff parents were entitled to an award of attorney's fees against the state defendant, but the Court's relevant holdings for purposes of our discussion here were:

> [(1) W]here the EHA is available to a handicapped child asserting a right to a free appropriate public education, based either on the EHA or on the Equal Protection Clause of the Fourteenth Amendment, the EHA is the exclusive avenue through which the child and his parents or guardian can pursue their claim; [and]
>
> [(2) W]here . . . whatever remedy might be provided under § 504 is provided with more clarity and precision under the EHA, a plaintiff may not circumvent or enlarge on the remedies available under the EHA by resort to § 504.

*Smith*, 468 U.S. at 1013, 1021.

Congress sought to override these holdings in the Handicapped Children's Protection Act of 1986, Public Law No. 99-372, 100 Stat. 796 (1986). Among other things, that statute added a provision to the EHA providing that the statute:

> shall [not] be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, title V of the Rehabilitation Act . . . or other Federal statutes protecting the rights of handicapped children and youth, except that before the filing of a civil action under such laws seeking relief that is also available under this part, the procedures under [the EHA] shall be exhausted to the

13

same extent as would be required had the action been brought [under the EHA].

*Id.* § 3.

The House Committee on Education and Labor's report on this amendment identified several *exceptions* to this exhaustion requirement, including complaints that:

> (1) it would be futile to use the due process procedures (e.g., an agency has failed to provide services specified in the child's individualized educational program (IEP) or an agency has abridged a handicapped child's procedural rights such as the failure to make a child's records available); (2) an agency has adopted a policy or pursued a practice of general applicability that is contrary to law; (3) it is improbable that adequate relief can be obtained by pursuing administrative remedies (e.g., the hearing officer lacks the authority to grant the relief sought); and (4) an emergency situation exists (e.g., the failure to take immediate action will adversely affect a child's mental or physical health).

H.R. Rep. No. 99-296, at 7 (1985).

We don't consider this legislative history for the purposes of interpreting a contested statutory provision. *Cf. Azar v. Allina Health Services*, 587 U.S. 566, 579–80 (2019) (considering utility of legislative history in interpreting a statute). Rather, it reflects Congress's recognition of a range of circumstances in which exhaustion of administrative remedies is excused, and has informed this Court's, and other Circuits', approach to the exhaustion requirement under the IDEA. *See, e.g., Association for Community Living in Colorado v. Romer*, 992 F.2d 1040, 1044 (10th

14

Cir. 1993) (citing the above legislative history as supporting the policy-or-practice exception to the exhaustion requirement); *Beth V. by Yvonne V. v. Carroll*, 87 F.3d 80, 88 (3d Cir. 1996) (same); *Hoeft v. Tucson Unified School District*, 967 F.2d 1298, 1303–04 (9th Cir. 1992) (same); *Christopher W. v. Portsmouth School Committee*, 877 F.2d 1089, 1094 (1st Cir. 1989) (same).

Significantly, as in our decisions in *Tirozzi* and *Weixel*, the House Report lists the various exceptions to the exhaustion requirement in the *disjunctive*. That undercuts the DOE's suggestion that the policy-or-practice exception applies only to challenges to policies or practices relating to structural or procedural matters that cannot be resolved through the administrative hearings process. Such challenges are squarely encompassed by distinct exceptions to the exhaustion requirement; the DOE's approach would render the policy-or-practice exception completely redundant.

That doesn't mean that "any plaintiff who interprets a governing statute differently than the agency charged with implementing it" can "sidestep the exhaustion requirement simply by saying so." Appellees' Brief 22. To probe the limits of the exception, we first consider how sister Circuits have applied it.

*B.      Sister Circuits*

At least two other Circuits have grappled with the policy-or-practice

exception, and their reasoning informs our own analysis. The Tenth Circuit

considered the exception in *Association for Community Living in Colorado v. Romer*.

992 F.2d at 1044. In that case, the plaintiffs brought a putative class action under

the IDEA alleging that the Colorado Department of Education ("CDE")'s policies

and practices with respect to extended school day and extended school year

services denied children with disabilities individualized programs tailored to their

unique needs. *Id.* at 1042. The Tenth Circuit declined to consider the merits of the

plaintiffs' challenges because the plaintiffs had failed to exhaust their

administrative remedies. *Id.* at 1044–45.

After concluding that the exceptions to exhaustion for cases in which

pursuing an administrative claim would be futile or would fail to provide

adequate relief did not apply, the Tenth Circuit considered the policy-or-practice

exception. *Id.* at 1044. It explained that a plaintiff can invoke the exception by

challenging a policy that is "contrary to law" and by showing "that the underlying

purposes of exhaustion would not be served" by applying the requirement. *Id.*

And it cited approvingly decisions holding that the purposes of exhaustion are not

generally served when the contested issue is "a pure matter of law." *Id.* (citing *Christopher W.*, 877 F.2d at 1095).

Applying this framework, the Court concluded that the plaintiffs' challenges to Colorado's eligibility criteria for extended school year services presented "a classic example of the kind of technical questions of educational policy best resolved with the benefit of agency expertise and a fully developed administrative record." *Id.* To determine whether CDE's policies had denied children with disabilities appropriate services would require "a factually intensive inquiry into the circumstances of each individual child's case." *Id.* The Court concluded that the purposes of exhaustion would be served in this context and declined to excuse the plaintiffs' failure to exhaust. *Id.* at 1044–45.

The Court viewed plaintiffs' allegation that CDE's policies arbitrarily predetermined the duration of extended school day and school year services as presenting a closer case, but concluded that resolution of the plaintiffs' claims "still ultimately requires a determination as to whether any individual child was denied a free appropriate public education"—the kind of determination that is enhanced by the factual details of a particular child's case. *Id.* at 1045.

Later Tenth Circuit cases identified in *Association for Community Living* two necessary hallmarks of the policy-or-practice exception to the IDEA exhaustion

17

requirement: (1) the challenge to the policy or procedure "raises only questions of law, thereby rendering agency expertise and the factual development of an administrative record less important," and (2) the underlying purposes of exhaustion would not be served by requiring it. *McQueen ex rel. McQueen v. Colorado Springs School District No. 11*, 488 F.3d 868, 875 (10th Cir. 2007); *see also Urban by Urban v. Jefferson County School District R-1*, 89 F.3d 720, 725 (10th Cir. 1996).

The Ninth Circuit has also considered the scope and limits of the policy-or-practice exception. In *Hoeft v. Tucson Unified School District*, the Ninth Circuit considered a putative class action claim by the respective parents of four disabled students who alleged that the school district's policies concerning extended school year services—both written and informal—denied their children the appropriate, individually tailored education required by the IDEA. 967 F.2d at 1301. The Court rejected the plaintiffs' argument that any challenge to "policies applied to all students" excuses exhaustion, *id.* at 1304, and instead reasoned that the exception for challenges to generally applicable policies that are "contrary to law" applies "when only questions of law are involved in determining the validity of a policy, as when the policy facially violates the IDEA," *id.* at 1305.

Applying that general premise, the Ninth Circuit concluded that the plaintiffs' challenge to the school district's eligibility criteria and methodology for evaluating which students received extended-year programming raised "the kind of technical questions of educational policy best resolved with the benefit of agency expertise and a fully developed administrative record." *Id.* Accordingly, plaintiffs were not excused from the exhaustion requirement with respect to these claims. *Id.* at 1306.

On the other hand, the Ninth Circuit concluded that plaintiffs' challenges to the school district's blanket policy of providing a uniform amount of extended year programming to eligible children regardless of individual need, and their contention that the school district's written notices to parents were inadequate, were "purely legal" challenges to general practices alleged to be "contrary to law." *Id.* at 1306–07. That determination was not dispositive of the exhaustion question. Even though resolution of these claims did not require technical expertise or the benefit of an administrative record—two of the purposes of the exhaustion requirement—the Ninth Circuit concluded that the purposes of the exhaustion requirement would be served by enforcing the requirement. *Id.* at 1307. In particular, the Court explained that enforcing the exhaustion requirement would

serve another purpose of that requirement—giving states a reasonable opportunity to correct local school policies that violate the IDEA. *Id.*

Subsequent Ninth Circuit decisions have refined the *Hoeft* analysis by identifying additional requirements or considerations. *See Doe by and through Brockhuis v. Arizona Department of Education*, 111 F.3d 678, 684 (9th Cir. 1997) (requiring plaintiffs to name a specific policy or procedure); *Student A by and through Parent A v. San Francisco Unified School District*, 9 F.4th 1079, 1084 (9th Cir. 2021) (requiring plaintiffs' specified policies to be unlawful and not just poor practices leading to poor outcomes); *Martinez v. Newsom*, 46 F.4th 965, 975 (9th Cir. 2022) (same).

More recently the Ninth Circuit has categorized the exceptions to the IDEA's exhaustion requirement differently from our Circuit. *Martinez*, 46 F.4th at 973–74 (identifying exceptions (1) for claims seeking "systemic or structural relief," (2) when the plaintiffs are not likely to secure adequate relief through administrative remedies, and (3) "when exhaustion would be futile"). But, like the Tenth Circuit's analysis in *Association for Community Living*, the Ninth Circuit's earlier analysis in *Hoeft* remains persuasive and informative as we consider the contours of the policy-or-procedure exception in our own Circuit.

## C. *Framing the Policy-or-Practice Exception*

To invoke the policy-or-practice exception to the IDEA's exhaustion requirement, plaintiffs must identify a specific policy of broad applicability that they contend is contrary to law. But that's not enough. As we have held with respect to other exceptions to IDEA exhaustion, our paramount consideration is "whether administrative review would further the goals of developing facts, making use of available expertise, and promoting efficiency." *J.S. v. Attica*, 386 F.3d at 113.

The above cases reveal several (non-exclusive) considerations that may answer that question in a given case. First, the plaintiffs' challenge to a general policy must raise a question of law that does not require (or even significantly benefit from) development of a factual record regarding the impact of a policy on an individual child's FAPE. If resolution of the plaintiffs' challenge to a general policy or practice calls for "a factually intensive inquiry into the circumstances of each individual child's case," *Association for Community Living*, 992 F.2d at 1044, exhaustion is not excused pursuant to the policy-or-practice exception.

Second, if the legal challenge turns on "the kind of technical questions of educational policy best resolved with the benefit of agency expertise and a fully developed administrative record," *id.*, the exception generally does not apply.

21

And finally, if excusing the exhaustion requirement undermines rather than promotes efficiency, a court may decline to apply the policy-or-practice exception.

## II.     Application Here

With these factors in mind, we consider Plaintiffs' allegations. Because this case comes to us from dismissal on the pleadings, we accept the material factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiffs. *Muto*, 668 F.3d at 56.

The complaint sets out the following factual allegations. Plaintiffs' children with disabilities are (or were) "twenty-one years old and continue to be eligible for special education in New York because they have not yet reached the age of twenty-two." App'x 16. None of the children have yet earned a regular high school diploma. App'x 16. And each of them was denied a FAPE after the conclusion of the school year or summer session in which they turned twenty-one. App'x 24–27.

The complaint also sets forth the following propositions. New York State law requires that districts provide public education to adults between the ages of twenty-one and twenty-two. App'x 21–22. New York State and New York City law and regulations purport to "limit the provision of FAPE until the conclusion of the school year in which that resident turns 21, or upon receipt of a Regents or

22

local high school diploma," with provisions for summer programming. App'x 23. Notwithstanding this Court's decision in *A.R.*, DOE has followed these state and local laws and regulations, thereby denying their disabled children a FAPE "beyond the end of the year in which they turn twenty-one and until such time as they turn twenty-two" in violation of the IDEA. App'x 29.

The complaint seeks a wide variety of relief. Plaintiffs seek emergency injunctive relief for those seeking pendency and a FAPE, a declaratory judgment that the "policies, procedures, and practices as alleged herein violate the applicable federal laws," a final judgment ordering the DOE to "modify their policies, practices and procedures," compensatory education, damages, and equitable relief. App'x 31–32.

Based on the above considerations, we conclude that exhaustion is excused on the basis of the policy-or-practice exception. Plaintiffs have pointed to a specific policy and practice they contend is contrary to law: DOE's across-the-board policy of providing a FAPE to students only until they turn twenty-one, and not until the end of those students' twenty-first years (i.e., their twenty-second birthday).

And the purposes of exhaustion would not be served by requiring it here. Plaintiffs' central claim for declaratory relief turns on a question of law that is untethered from the individual circumstances of any individual student, and the

resolution of which would not benefit from an administrative record in an individual case or cases. Plaintiffs clarify that this litigation, at this stage, essentially seeks the answers to two questions: "(1) whether special education students in New York City are entitled to education until the age of 22; and (2) if so, whether [DOE's] failure to provide it entitles such students to compensatory education in general." Appellants' Reply Brief 11. No student-specific factual development is necessary to answer these questions. (Likely, no factual development at all is required, as New York City's laws and practices with respect to adult education are most likely to be embodied in statutes and regulations.)

Moreover, the strictly legal questions at issue here do not require the "exercise of discretion and educational expertise by state and local agencies." *J.S. v. Attica*, 386 F.3d at 112. And, finally, requiring many hundreds of individual hearings would not promote efficiency. Thus, we conclude that Plaintiffs' claims fall within the policy-or-practice exception to the IDEA's exhaustion requirement.

In its arguments to the contrary, the DOE emphasizes that exhaustion would not be futile here in that Plaintiffs' claims can be, and in fact have been, effectively litigated in individual administrative proceedings. We express no opinion on the applicability of that distinct exception to the exhaustion requirement because, for

24

the above reasons, we conclude that exhaustion is excused on the basis of the policy-or-practice exception.

* * *

Accordingly, we VACATE and REMAND for further proceedings consistent with this opinion.